88 So.2d 815

**Mrs. Elvira ABUNZA, wife of Charles N. Olivier,**

v.

**Charles Numa OLIVIER.**

No. 42631.

June 11, 1956.

Sam Monk Zelden, Max Zelden, New Orleans, for plaintiff, appellant and appellee.

John E. Fleury, Gretna, for defendant-appellee and appellant.

McCALEB, Justice.

This appeal involves the partition and settlement of the community of acquêts and gains formerly existing between plaintiff and defendant.

On February 6, 1952, plaintiff filed suit against her husband for a separation from bed and board and obtained judgment on July 1, 1952, the parties being referred to Rudolph M. McBride, Notary Public, to effect a partition of the community.

While the settlement of the community was pending, the husband sued for and was granted an absolute divorce on the ground that the parties had been living separate and apart for more than two years, which decree was affirmed by this Court on November 8, 1954. See Olivier v. Abunza, 226 La. 456, 76 So.2d 528.

Evidently, the divorce action brought by the husband effected a delay in the settlement of the community, for it was not until February 4, 1955, that the notary, Mr. McBride, after hearing much testimony, filed his report to the judge in which he set forth his opinion as to the amount due each spouse. Counsel for the opposing litigants had, by stipulation, agreed upon the status of many of the items listed in the notary's report. However, nine of the items were seriously disputed and oppositions to the report were filed by both parties. After hearing evidence and argument on these oppositions, the trial judge dismissed all objections and approved and homologated the notary's report in its entirety, fixing the attorneys' fees at $1,500 each, to be paid out of the community funds. Both plaintiff and defendant[1] have appealed from this judgment.

The first disputed item (Item No. 6 in the notary's report) concerns the succession of defendant's mother, Mrs. Joseph G. Olivier, which was unconditionally accepted by defendant in January of 1936, the other heirs renouncing in his favor. The succession was insolvent, with liabilities in the amount of $8,800.10 which defendant concedes represented his separate indebtedness. The notary found that of this amount $5,334.83 had been paid with community funds and that, accordingly, defendant's separate estate was indebted to the community in that sum.

Plaintiff maintains that this figure should be increased by $3,000, representing the face value of a note executed by defendant's mother and held by the late Mrs. George A. Hero, defendant's aunt. Defendant testified that the note was never paid at all, having been forgiven by Mrs. Hero prior to her death and destroyed by her in his presence. Counsel for plaintiff argue that defendant's testimony should be disregarded, since it involves a declaration against interest of a deceased person, which is the weakest kind of evidence.

 The contention is without merit. While mindful of the fact that a declaration against interest by a deceased is the weakest kind of testimony, it is admissible and does have some probative value. It must, of course, be scrutinized with great care, since it can be so easily fabricated, but this concerns the weight of the proof rather than its competency. The notary and the trial judge were convinced of the truthfulness of defendant's testimony in this regard and we think they were justified in doing so. The record clearly establishes Mrs. Hero's fondness for defendant and her many benefactions to him. Furthermore, the burden was on plaintiff

---

1. C. Numa Olivier died on April 4, 1956, and Mrs. Ouida Crain Olivier, testamentary executrix of his succession, has been substituted as defendant (and appellee-appellant) in his place and stead.

to prove (1) that the $3,000 debt was actually paid and (2) that community funds were used for that purpose. No effort whatever was made by her to carry this burden.

Item No. 7 has to do with a fee of $8,000 received by defendant as executor of the succession of Mrs. George A. Hero. The succession was opened August 20, 1951, and defendant received a check for his executor's fee on October 31, 1951, which was cashed [2] the same day. Defendant was not discharged as executor until June 17, 1953.

The lower court found this $8,000 to be a community asset but allowed a credit of $3,977.31, this being the amount of federal and state income taxes paid by defendant in 1951, allocable to the $8,000 fee. It was thus concluded that the community was entitled to the sum of $4,022.69.

■ Both parties oppose this finding. Counsel for plaintiff assert that the entire $8,000 should fall into the community as there was no proof that defendant paid the income taxes out of this particular fund.

However, defendant testified that the taxes were paid out of this money and his statement is partially supported by the cancelled check showing payment of the federal tax. We conclude that the judge did not err in allowing him a credit for these payments.

■ On the other hand, counsel for defendant makes alternative contentions in regard to this item. Initially, it is argued that the $8,000 was bequeathed to defendant and became separate property. This point has no substance as the will provided that the $8,000 was a fee and it appears that defendant treated it as such, having paid federal and state income taxes on the sum.

In addition, counsel says that, even if the $8,000 is community property, defendant is entitled to be paid out of the community assets that portion of the fee representing the services rendered by him as executor after the community was dissolved, i.e., from July 1, 1952, the date of the judgment of separation,[3] until June 17, 1953, the date defendant was discharged as executor of Mrs. Hero's succession.

---

2. This check was not deposited by defendant but was cashed and actually pocketed by him, evidently because, at the time of the payment, the parties were separated. Later, however, the sum was deposited and checks drawn on the account for the amount of taxes due.

3. Counsel for defendant, citing Talbert v. Talbert, 199 La. 882, 7 So.2d 173, asserts that the community was dissolved as of February 6, 1952, the date the suit for separation from bed and board was filed. This Court has recently held, however, that the community of acquêts and gains is dissolved at the time of the rendition of such judgment and not as of the date of the filing of suit therefor. Tanner v. Tanner, 229 La. 399, 86 So.2d 80 and Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169.

 We cannot accept this proposition. The $8,000 was received during the existence of the community and therefore is presumed to be community property in its entirety. Defendant has not successfully rebutted this presumption merely by showing that he continued in the capacity of executor after the community was dissolved. In the absence of specific proof as to the extent of the services rendered by defendant after the dissolution of the community, it is impossible to deduce the proportion of the fee, if any, which was earned after July 1, 1952.

We next consider Item No. 9 of the notary's report,[4] which concerns the use of community funds and labor for the repairs and alleged improvement of certain real estate in Belle Chasse, Louisiana, which is the separate property of defendant, having been inherited by him from his mother's succession in 1936. Plaintiff and defendant resided on these premises from 1936 until 1950 and plaintiff, relying upon Article 2408 of the Civil Code, claims that she is entitled to one-half of the enhanced value of the property resulting from repairs and improvements effected by community funds and labor. The trial judge found that the community was entitled to reimbursement of the sum of $225 from

4. Item No. 9 actually consists merely of a claim for the use of community funds in spreading shells and for community labor and material in repairing a barn. But our discussion of Item No. 9 also disposes

defendant in connection with certain improvements made on the property.

 This finding is clearly erroneous. Recovery under Article 2408 of the Civil Code is not based on the amounts expended by the community for the repair and improvement of the separate property of one of the spouses; it is limited to the enhanced value of the property resulting from the repairs and improvements. Succession of Singer, 208 La. 463, 23 So.2d 184; Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502; Williams v. Williams, 215 La. 839, 41 So.2d 736 and Abraham v. Abraham, La., 87 So.2d 735. Although repairs and improvements to the property, which was used and enjoyed by the parties as their matrimonial domicile, were apparently made with community funds and labor, there is nothing in the record to show any enhancement in value of the property at the time of the dissolution of the community. In these circumstances, plaintiff's claim in this respect will be dismissed.

Item No. 10 involves the sum of $2,000 which defendant allegedly brought into the marriage. He claims a credit against the community for this amount.

This claim was properly rejected by the trial court as the $2,000 was admittedly spent prior to the judgment of separation

of further claims made by counsel for plaintiff as to other alleged repairs and improvements effected upon this property with community funds and labor.

and defendant has made no showing that the community was enhanced at its dissolution by the expenditure of this fund. See Munchow v. Munchow, 136 La. 753, 67 So. 819 and Vicknair v. Terracina, 168 La. 417, 122 So. 276.

The law is stated in the Munchow case thus:

"In the settlement of a community of acquêts and gains, the husband is not entitled to have credit for separate funds contributed by him to the community, except to the extent that the property of the community is thereby enhanced in value at the time of its dissolution; and this must be shown with reasonable certainty."

In support of his position that a credit should be allowed defendant, counsel cites the case of Talbert v. Talbert, 199 La. 882, 7 So.2d 173, where it was held that a husband who had 250 head of cattle at the date of his marriage was entitled to take as his separate property, at the dissolution of the community, a like number of head from the cattle on hand to replace those owned by him at the time of his marriage. To the same effect, see Succession of Andrus, 131 La. 940, 60 So. 623 and cases therein cited.

Assuming the correctness of these decisions without re-affirming them, we are convinced that they should be limited in their effect to livestock and the like [5] and do not apply to items, such as money, that are so readily expendable. We are reinforced in this view and in the soundness of our rejection of defendant's claim by the language of the court in Succession of Geagan, 212 La. 574, 33 So.2d 118, 128, where, disposing of a similar contention, it stated: " * * * we know of no law, nor have counsel cited any, to the effect that at the dissolution of the community it owes each separate estate the value of whatever property the spouse had at the time of the marriage."

Furthermore, consideration in these cases must be given to the doctrine of commingling separate and community funds. When separate funds are mixed with community, they become part of the latter, so much so, that it is practically impossible to deduce that the former, when spent, has been used to enhance the community. Succession of Provost, 190 La. 30, 181 So. 802.

Item No. 11 relates to the sum of $2,860.80 which defendant acquired from the liquidation of the Courtableau Lumber

---

5. The rationale of the cases can perhaps be justified by analogizing the community's duty of restitution to that of an usufructuary of a herd of cattle who, if the whole herd does not die, is bound to make good at the expiration of the usufruct the number of dead out of the new born cattle, as far as they go. Article 593 of the Civil Code.

Company. The equity in this company, in which defendant's father was a partner, was listed as $10 in the succession of defendant's mother in 1936. Subsequently, the company, which had been in dire financial straits, became valuable and defendant realized $2,860.80 from its liquidation. This money was admittedly deposited by defendant in a community account but it is his contention that he is entitled to a credit for the $2,860.80 against the community funds which he used to pay off the debts of his mother's succession. See the discussion of Item No. 6, supra. This claim was allowed by the district court.

■■■■ We think the ruling correct. This money, when received by defendant, was clearly his separate property being a distribution of capital from the equity received by him from his mother's succession and it is only fair to presume that, when he deposited it in the community account, he was repaying the community for the money previously borrowed from it to pay the debts of his mother's succession. Thus, the $5,334.83 claim of the community against defendant's separate estate (see Item No. 6, supra) was actually reduced by the amount of $2,860.80 and, accordingly, we approve the judge's ruling on this item (Item No. 11) so as not to disturb the method of recapitulation adopted by the notary.

Item No. 12 involves three gifts of money allegedly made by Mrs. George A. Hero to defendant totalling $3,753.50. The lower court, finding defendant's testimony regarding these donations to be substantiated by pertinent bank records, allowed him a credit against the community of $3,753.50.

■■■■ This claim was improperly allowed. While the evidence is convincing that the gifts were actually made, they were deposited in defendant's account in the First National Bank of Jefferson Parish at Gretna. This account admittedly contained community funds and the gifts were undoubtedly commingled therewith. Moreover, there was no showing that the expenditure of this particular money, even if it could be segregated, resulted in any enhancement of the community at its dissolution. See Munchow v. Munchow, supra; Vicnair v. Terracina, supra, and Succession of Provost, supra.

Item No. 13 concerns a bank account in defendant's name in the First National Bank of Jefferson Parish at Gretna. This account, amounting to $1,834.27, was closed out by defendant on February 6, 1952. Although conceding it to be a community account, counsel for defendant claims a credit for the entire amount, alleging part of the money to have been spent to pay federal income tax for 1951, part to be a welfare fund held by defendant for his

employer, the Louisiana Power and Light Company, and part to be a travelling advance made to him by his employer. The lower court rejected all these claims.

■ We think the judge erred as to this item. There were no funds in the account at the dissolution of the community and the testimony of defendant, which is partially corroborated by cancelled checks, satisfies us that the funds were used to defray community expenses. Thus, we hold the $1,834.27, which was spent prior to the judgment of separation, not to be a community asset.

Items Nos. 14 and 15, each involving a bank account in defendant's name in the Poydras Street Branch of the Whitney National Bank, will be considered together. Both accounts, totalling $9,483.73, were closed out by defendant on February 6, 1952, the date plaintiff filed this suit. It is defendant's testimony that, in July of 1951, Mrs. George A. Hero donated to him two checks, each in the amount of $5,000 and that the said checks were deposited in separate accounts in the aforementioned bank, one in the name of C. N. Olivier and one in the name of C. N. Olivier, Special Account. His testimony is fully corroborated by Mrs. Hero's cancelled checks and the appropriate bank statements. De-

fendant's bank statements also show that no other deposits were made in either of these accounts.

■ The evidence establishes beyond peradventure the fact of the manual gifts and defendant's intention to retain them for his separate estate. Hence, the trial judge properly ruled that each of these bank balances was defendant's separate property.

■ In their brief, counsel for plaintiff request that their fee be raised from $1,500, as fixed by the trial judge, to $2,000 because of the great amount of additional work and time expended in connection with the case. We cannot grant counsel's request for the reason that the matter of the adequacy of their fees is not before this court. If they were dissatisfied with the award of the trial judge, they should have appealed from the judgment.

■ For the foregoing reasons, the judgment of the district court homologating the report of Rudolph M. McBride, Notary Public, is amended by rejecting Items Nos. 9, 12 and 13 of said Notary's report. As thus amended, the judgment appealed from is affirmed. The costs incurred in this court are to be paid out of the assets of the community.