137 So.2d 505 (1962)
Carolyn SMITH, Plaintiff and Appellee,
v.
Rena GARRISON et al., Defendants and Appellants.
No. 469.
Court of Appeal of Louisiana, Third Circuit.
February 7, 1962.
*506 McDaniel & Henderson, by Leo F. McDaniel, Lake Charles, for defendants-appellants.
William L. McLeod, Jr., Lake Charles, for plaintiff-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
Plaintiff, Carolyn Smith, instituted this suit against the legal heirs of her deceased husband, Ishmeal Smith, seeking to recover from defendants the sum of $5,148.98. As a basis for this demand, plaintiff contends (1) that she paid the sum of $646.70 as funeral expenses in connection with the death of her husband; (2) that she loaned and advanced to the decedent, from her separate and paraphernal funds, the sum of $2,000.00, in cash, which amount was used by him to improve his separate property; and (3) that funds belonging to the community of acquets and gains which existed between plaintiff and the decedent were used to improve the separate property of the decedent, and that plaintiff as his surviving spouse is entitled to recover from defendants one-half the enhanced value of such property.
After trial of the case on its merits judgment was rendered by the trial court in favor of plaintiff for the sum of $4,396.70. Defendants have appealed from that judgment.
The evidence establishes that plaintiff and the decedent, Ishmeal Smith, were married on June 9, 1955, and that this marriage was terminated by the death of the said Ishmeal Smith on March 17, 1959. During their marriage plaintiff and the decedent occupied and made their home in a residence building in Lake Charles which was owned by the decedent, it having been acquired by him prior to his marriage and thus it belonged to his separate estate. After the death of plaintiff's husband the defendants accepted his succession purely, simply and unconditionally, and by formal judgment of the Fourteenth Judicial District Court, in and for Calcasieu Parish, they were recognized as the legal heirs of said decedent and were placed in possession of all property left by him, including the residence building theretofore occupied by plaintiff and the decedent as a home.
Plaintiff is a school teacher. She was teaching at the time of her husband's death, and had been teaching continuously for about 17 years prior to that time. The decedent was employed as a longshoreman during his marriage to plaintiff. His work as such was irregular, and his average annual income was much less than that of his wife.
Defendants concede that plaintiff incurred and paid funeral expenses in connection with the death of her husband, amounting to the sum of $646.70, and that she is entitled to recover that amount from them. The trial court, therefore, correctly included that amount in the award which was made to plaintiff.
Plaintiff testified that during the year 1954, prior to her marriage to the decedent, she delivered and entrusted to her friend, Fairy Washington, a package containing the sum of $2,000.00, in cash, with instructions that this package was to be kept safely for plaintiff, but that if anything *507 happened to her the package was to be delivered to plaintiff's brother. This amount, she says, was an accumulation of a part of her earnings prior to the time of her marriage, and accordingly it constituted a part of her separate and paraphernal estate. She further testified that during the latter part of the year 1958, after her marriage to the decedent, this money was returned to her by Fairy Washington, and that she then loaned or advanced it to her husband to be used to improve the residence building in which they then lived. All of the money, she testified, was spent for lumber which was used to improve the house. Fairy Washington confirmed plaintiff's testimony to the effect that a package was handed to her for safekeeping by plaintiff in 1954, with instructions that it was to be delivered to plaintiff's brother if anything happened to plaintiff, that this package was returned to plaintiff in 1958, and that when it was returned she ascertained that the package contained $2,000.00, in cash. Andrew Armstrong, the principal of the school in which plaintiff taught, testified that he was present when the money was returned, and that he saw Fairy Washington deliver it to plaintiff.
Counsel for defendants contends that the evidence fails to establish that any such loan or advance was made by plaintiff to the decedent from plaintiff's separate funds. We agree with counsel that it seems improbable that plaintiff would have entrusted this large sum of money to a friend for safekeeping for such a long period of time. She explained, however, that she did this shortly after her marriage to the decedent, that she did not know how the marriage would work out, and that she wanted to be certain that her brother would receive these funds in case anything happened to her. It also seems unlikely to us that plaintiff would have advanced this sum of money to the decedent without a receipt or some other equally satisfactory proof that the advance was made. The evidence shows, however, that some substantial improvements were made to decedent's residence building during the year 1958, which tends to support plaintiff's testimony that the amount which she advanced was used for that purpose.
The trial judge was in a better position to evaluate the testimony of the witnesses than we are, and we are not able to say that he erred in his conclusion that plaintiff actually advanced the sum of $2,000.00 to the decedent from her separate funds, and that all of that amount was used by the decedent for repairing and improving his separate property. We conclude, therefore, that the decedent received this sum of money from plaintiff, that the funds so received belonged to the separate and paraphernal estate of plaintiff, that the decedent disposed of said funds for his individual interest, and that the trial court correctly permitted plaintiff to recover that amount from defendants. LSA-C.C. Arts. 2390 and 2391. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348.
Plaintiff also contends that funds belonging to the community of acquets and gains which existed between her and her husband were used to improve the decedent's separate property. She contends that she is entitled to recover one-half the enhanced value of such property from defendants. Under the provisions of Article 2408 of the LSA-Civil Code plaintiff is entitled to recover one-half the increase or enhancement in value of the decedent's separate property which resulted from their common labor, expenses or industry, provided that she may not recover if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade. Recovery under the provisions of that article of the Civil Code is not based on the amounts expended by the community for the repair or improvement of the separate property of the deceased spouse, but it is limited to the enhanced value of the property resulting from the repairs and improvements. Abunza v. Olivier, 230 La. 445, 88 So.2d 815; Succession of Rusciana, *508 232 La. 1073, 96 So.2d 1; Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502.
Where improvements are placed on the separate property of one of the spouses during the marriage, there is a presumption that these improvements were paid for with community funds. If it is established that the improvements were actually constructed and that they did enhance the value of the separate estate of the spouse, then this presumption comes into existence and the burden of proof shifts to the spouse who owns the separate property to prove with reasonable certainty that community funds were not used, but that his separate funds were used instead, to construct these improvements. Giamanco v. Giamanco, La. App. 3 Cir., 131 So.2d 159.
In this case the evidence establishes that between the date plaintiff married the decedent and the date of the latter's death a number of improvements were made to the residence building occupied by them, which building, as has already been pointed out, belonged to the separate estate of the decedent. These improvements consisted of adding approximately eight feet to the rear of the back bedroom on the house, adding approximately 15 feet to the rear of the house adjacent to the kitchen, adding and finishing a second floor in the living room, refinishing all other floors, rebuilding the front porch, constructing a new bath with three new colored fixtures, installing a hot water heater, constructing eight feet of new kitchen cabinets, installing 12 venetian blinds, painting, installing a television aerial, constructing a carport, and canvassing and papering the interior of the building.
W. B. Coleman, a qualified expert in real estate, testified that in his opinion approximately $3,903.00 had been expended for making additions and improvements to the house since June 9, 1955, which is the date of the marriage of plaintiff and the decedent. He further testified that in his opinion the house had a value of $2,500.00 at the time plaintiff married the decedent, and that at the time of the death of plaintiff's husband, on March 17, 1959, it had a value of $6,000.00. He estimated, therefore, that the additions and improvements made between those two dates enhanced the value of the property by $3,500.00, and that this increase or enhancement in value was due solely to the improvements which were made, and was not due to the general economic conditions of that area.
Counsel for defendants contends that the opinion expressed by Mr. Coleman should not be accepted because his conclusions were based on the cost of the additions and the improvements, rather than on the enhanced value of the property. Our review of Mr. Coleman's testimony convinces us that although he considered the cost of the repairs as one of the factors in arriving at the enhanced value of the property, his conclusion and his testimony was to the effect that because of these improvements, and regardless of their cost, the property had been enhanced in value by the sum of $3,500.00.
It is pointed out by counsel for defendants that Mr. Coleman's estimates of the cost of the repairs which had been made to the house are not consistent with the evidence produced by plaintiff as to the actual cost of such repairs. We agree that there are a number of inconsistencies between the estimates given by the real estate expert and the testimony as to actual costs of repairs. The testimony tending to show the actual amounts spent for repairs and improvements, however, is vague and indefinite, and we do not feel that it establishes the actual cost of the improvements. In our opinion the estimates given by Mr. Coleman are more accurate as to those costs than is the other testimony relating to them. Also, as we have already pointed out, plaintiff's right to recover is not based on the amounts expended for repairs, but it is based on and is limited to the enhanced value of the property as the result of those repairs and improvements. Mr. Coleman listed all of the repairs or improvements which had *509 been made, and he then expressed his opinion as to the extent to which these improvements enhanced the value of the property. His estimates as to the costs of the repairs were considered only as one factor in arriving at his final opinion as to the enhancement in value, and we think it is immaterial that his estimates in that respect differed in some instances with the vague testimony of others as to such costs.
The only other real estate expert who testified at the trial was Reid Tyler, who was called by defendant. He stated that in his opinion the decedent's residence building now has a rental value of $65.00 per month, and, considering that fact, he feels that the property has a present value of $6,500.00. He did not express an opinion as to the value of the property at the time plaintiff and decedent were married, or as to how much the improvements to the property had enhanced its value. His opinion as to the present value of the property is in line with that expressed by Mr. Coleman, and there is nothing in his testimony which indicates that he differs with Mr. Coleman as to the extent to which the repairs and improvements made since June 9, 1955, have enhanced the value of such property.
The trial court concluded that community funds had been used to repair and improve the separate property of the decedent, and that as a result of this expenditure of community funds, the value of decedent's property was enhanced by the sum of $3,500.00. He permitted plaintiff to recover from defendants one-half of that amount, or $1,750.00.
We think the evidence supports the trial court's conclusion that as a result of the repairs and improvements made to the decedent's separate property during his marriage to plaintiff the value of decedent's separate property was enhanced by the sum of $3,500.00, but we think the court erred in concluding that all of those improvements were made with community funds, and in permitting plaintiff to recover one-half of that entire amount.
According to Mr. Coleman's testimony, approximately $3,903.00 was spent for repairs and improvements on this building, and these expenditures resulted in enhancing the value of the building by $3,500.00. The enhancement in value, therefore, almost equaled the amount which he estimated had been spent for repairs. We have concluded that $2,000.00 of the amount spent for these repairs and improvements were advanced by plaintiff from her separate and paraphernal funds, and plaintiff is being permitted to recover the full amount so advanced. It follows, therefore, that only the remaining costs of such expenditures, over and above this $2,000.00, was paid from community funds. Since the property was enhanced in value by $3,500.00, and $2,000.00 of that amount was paid from separate funds of plaintiff, we conclude that only the remaining $1,500.00 of such enhancement can be attributed to the expenditure of community funds. Plaintiff is entitled to recover one-half of the community funds expended for that purpose, or $750.00.
In our opinion, therefore, plaintiff is entitled to recover the sum of $646.70 which she expended as funeral expenses, the additional sum of $2,000.00 which she advanced from her paraphernal funds for the improvement of decedent's separate property, and the further sum of $750.00, being one-half the amount of community funds used for the improvement of such property, making a total of $3,396.70. The judgment of the trial court must be amended accordingly.
For the reasons herein set out, the judgment of the district court is amended by reducing the judgment in favor of plaintiff and against defendants to the sum of $3,396.70, with legal interest thereon from February 23, 1960, until paid. In all other respects the judgment of the district court is affirmed. Defendants are condemned to pay all costs incurred in the trial court. All costs of this appeal are assessed to plaintiff-appellee.
Amended and affirmed.