AYRES, Judge.
This is an action by the testamentary-executrix of the succession of Mrs. Birdie-Carter Edmondson, deceased, against the decedent’s surviving spouse to determine in< a declaratory judgment that the succession-is not indebted to him. The executrix further prayed that her rights, as the sole and’ only heir of the decedent and as executrix, of the succession, to assert any claims-against the defendant, be reserved. This-action was precipitated by the defendant in-filing with the executrix a claim against the succession in the sum of $37,283.87.. Defendant alleged an indebtedness of $52,-180.05 owed by the decedent’s separate estate to the community estate formerly existing between him and the decedent, of which amount he claimed one-half, or the-sum of $26,090.02. In addition, he claimed' the sum of $9,743.85 allegedly due his separate estate by the community estate. In’ general, the claims were for reimbursement of community funds allegedly expended on separate property of the decedent and! for its alleged enhancement in value-through common labor, expenses, and industry of defendant and the decedent.
In answer to the demands made upon-him, defendant asserted essentially the same claims as originally made, and prayed: for judgment recognizing his claims in the-sum of $36,257.16. It is noted, however,, that in submitting the matter to the trial court as well as to this court, defendant sought judgment for only $26,394.75, itemized as follows:
A. Reimbursement for enhanced value of separate estate from community *894 efforts (LSA-C.C. Art. 2408):
1. House and outbuildings, 4817 Old Moorings-port Road $11,450.00
2. Increased value of lots in Edmondson Subdivision Unit No. 2 20,100.00
3. Improvements on 1014 Anthony Street 3,500.00
B. Liens on separate property paid with community funds:
1. Payment on balance owed on land, 15-acre tract 2,400.00
2. Payment to Life & Casualty Insurance Co. of Tennessee on mortgage on house at 4817 Old Mooringsport Road 3,904.37
3. Payment of paving lien on 1014 Anthony Street 1,547.44
C. Claims for separate funds advanced to the community:
1. Amounts on hand at time of marriage $5,100.00
2. Purchase price from sale of Merrick Street property 2,393.85
In her petition, plaintiff pleaded alternatively, and as an offset, an indebtedness of the defendant to the decedent in the sum of $6,500.00.
The trial court held defendant indebted to the succession to the extent of $6,500.00 and, after recognizing defendant’s claims in the sum of $3,000.00 on two separate items, otherwise rejected defendant’s demands. The court concluded that de-cedent’s separate property on Anthony Street in Bossier City had appreciated in value to the extent of $500.00 as a consequence of a paving assessment of $1,547.44 being paid from community funds. The •defendant was accordingly allowed the sum of $500.00, instead of the proper portion of one-half that amount, because of the enhancement. The court also found that the decedent had used her separate funds for payment of a considerable amount of the cost of a tenant house and residence on separate property located on the Old Moor-ingsport Road, but that defendant had supervised some of the construction work. Community funds were also found to have been expended with reference to that property. The improvements were found to have a value of $10,000.00. The community estate was allocated one-half of this amount, resulting in an allowance of $2,500.00 to defendant as his community interest. The total award of $3,000.00 to the defendant was held to have been extinguished by compensation. Reservation of the right of the executrix, in either her individual or representative capacity, to claim the remaining $3,500.00 of the $6,-500.00 indebtedness was also directed in the court’s decree. All costs of the proceedings were assessed against the succession except that defendant was ordered to pay the fees of his own experts.
From the judgment thus rendered and signed, defendant appealed. In answering the appeal, plaintiff prayed that the judgment be amended by rejecting in toto defendant’s demands against the succession and that he be assessed with all costs of this proceeding. Plaintiff also prayed for a reservation of her rights to assert against the defendant in a subsequent action the claim for $6,500.00 plus interest.
The defendant assigns as error the action of the court in (1) not recognizing defendant’s claim for one-half of the increased value of decedent’s separate property, resulting from the construction of the residence and the making of other improvements on decedent’s separate property situated at 4817 Old Mooringsport Road, and in limiting this claim on his part to $2,-500.00; (2) failing to recognize defendant’s claim for the increased value of the lots in Edmondson Subdivision Unit No. 2 *895 and of the property situated at 1014 Anthony Street in Bossier City as a result of community efforts; (3) failing to recognize the amounts paid by defendant from community funds on liens against the separate estate of decedent by considering those claims along with the claims for reimbursement under LSA-C.C. Art. 2408; (4) failing to allow defendant credit for separate funds advanced to the community; and (5) recognizing the claim of the executrix against him in the sum of $6,500.00.
Mrs. Birdie Carter Edmondson passed away February 7, 1964, leaving a last will and testament in which her only child, Mrs. Margie Minchew Brown, plaintiff herein, was named sole legatee and executrix of her estate. Decedent was first married to B. Minchew, father of plaintiff, from whom she was divorced in 1929. She then married W. P. Carter on December 9, 1936. He died January 10, 1937; and, on December 27, 1938, she married defendant, Raymond R. Edmondson, with whom she was living at the time of her death.
This proceeding concerns primarily a settlement of the community and separate estates of the decedent.
As a prerequisite to a discussion of the various claims and counterclaims, the trial court reviewed in considerable detail the financial condition of the parties at the time of their marriage, as reflected by the record, and made the following observations :
“Mr. and Mrs. Edmondson were married on December 27, 1938, and both parties had been previously married. Mrs. Edmondson owned her home on Anthony Street in Bossier City, which was completely furnished; a Chrysler automobile, all free of indebtedness; and other assets of an indeterminate amount. Mr. Edmondson was divorced from his former wife, and had executed a community property settlement with her on July 14, 1938, in which he conveyed to her the furniture and household furnishings and an interest in several mineral leases, and paid her the sum of $150; and she, in turn, conveyed to him the remainder of the community property. He was at that time employed as a tire salesman by Strother Tire Service; and on December 17, 1938, according to his checkbook stub, had the sum of $826.-43 in the bank. On this date, approximately nine days before their marriage, Mr. Edmondson purchased a house and lot at Municipal No. 126 Merrick Street, Shreveport, La., for the sum of $500 cash, and gave a mortgage for the balance of the purchase price, payable in monthly installments of $38.05, payments of which will be discussed later. There was no evidence produced at the trial showing that Mr. Edmondson inherited any property during his marriage, or to show that he ever received any income from the sale or production from the mineral leases he testified that he received in the community property settlement agreement with his former wife. Mr. Edmondson testified that a short time after their marriage, he told Mrs. Edmondson he had $5,100, and she said' she would match it and they would get out of debt; that he put up this amount of money and they had money in the bank totaling $9,400 to $9,600 in the First National Bank. There was no evidence presented to corroborate this statement of Mr. Edmondson that he had $5,100 or any sum in the bank at the time of his marriage, except the sum of $826.43 which was shown on his checkbook stub as being the amount on hand on December 17, 1938. We must therefore conclude that this was all that he had, and after making the down payment of $500 and first payment on the house, that he only had in the bank on December 31, 1938, the sum of $162.16, as reflected by his checkbook stub — at which time Mrs. Edmondson contributed $5,000 which was on that date deposited to his account.
“The evidence concerning the separate property of Mrs. Edmondson is, of *896 course, limited almost entirely to the documentary and written instruments filed in the record. While Mr. Edmond-son testified that he was coerced into signing the document filed in evidence in the form of a letter written and signed by him to Mrs. Edmondson acknowledging that shortly after their marriage she advanced him $6,500 which was her separate property and owned by her prior to their marriage, we are convinced from the testimony of Mr. Wellborn Jack, who signed the instrument as a witness, that Mr. Edmondson voluntarily signed the instrument in his office and fully understood the meaning and purpose of the instrument when he executed it on October 7, 1943.”
We find that the learned judge of the trial court was ingenious in the development of the pertinent facts and in pointing out the principles of law applicable to this litigation.
With reference to the claims of defendant for reimbursement for the enhanced value of decedent’s separate estate resulting from the expenditure of community funds, and particularly with reference to the house and outbuildings at 4817 Old Mooringsport Road, the court made these observations:
“We find that the house and outbuildings on this property, which consisted of approximately fifteen acres, were remodeled and rebuilt, or the old structures torn down and rebuilt; that this property was purchased with the separate and paraphernal funds of Mrs. Edmond-son. Mr. Edmondson testified that the funds used in the purchase and construction on the property were from a joint bank account, but the statement from the First National Bank on the account from which the down payment was made on the property and checks were drawn for payment of the construction of the property (the account listing deposits and withdrawals from December 12, 1940, through January 30, 1941) shows deposits to the account of Mrs. Birdie C. Edmond-son in the amount of $4,405, and the checks issued by Mrs. Edmondson on this account for the succeeding months of February, March, and April of 1941 (except those payable to R. R. Edmondson and one in March to the First National Bank in the amount of $100, with the notation that it is to pay the note of R. R. Edmondson) are in payment of labor and material on this property. Mr. Edmondson made no attempt to explain where Mrs. Edmondson obtained the funds deposited in this account; and certainly, if they had not been her separate and paraphernal funds, he would have been able to explain where she got the money, in view of the large amount and the short period over which it was deposited in her account. We therefore hold that this property was purchased with the separate and paraphernal funds of Mrs. Edmondson, and most of the construction on the property was paid for with her separate and paraphernal funds. We further find that on December 10, 1941, Mr. and Mrs. Edmondson received the sum of $3,000, for which they gave a note secured by a mortgage on this property; and the mortgage, which was paid in monthly installments, was paid from community funds.
“Our law provides that when community funds are used to build improvements on the separate property of one spouse, the other spouse is entitled to a reward of one-half the value of the increase, and this is not determined by the cost of the improvements if it be proved that the increase or ameliorations were the result of common labor, expenses and industry. See Chrisentery v. Chrisentery [La.App.], 124 So.2d 426; Smith v. Garrison [La.App.], 137 So.2d 505. This personal account of Mrs. Edmondson’s was completely depleted and closed on April 26, 1941; and with the additional deposit of $60 on March 8, 1941, there was a total withdrawal of $4,465. As previously stated, the entire funds, with the excep *897 tion of checks payable to R. R. Edmond-son and to the First National Bank in payment of a note of his, were used for payment of labor and material in the construction of improvements on this property. Counsel for Mr. Edmondson contend that in view of the fact that they have shown that community funds, i. e., the mortgage on the property dated December 10, 1941, which was paid for with community funds, and the labor contributed by Mr. Edmondson, entitled him to one-half of the increase in the value of this property, which amounts to $11,-450, the burden shifted to Mrs. Brown to affirmatively establish that this increase was due to the ordinary course of things, rise in values, or chances of trade, which she had not shown on the trial of the case, as announced by our Supreme Court in the case of Abraham v. Abraham [230 La. 78], 87 So.2d 35 [735], While the evidence did show that the mortgage was paid with community funds, and Mr. Ed-mondson himself testified that he performed work on the improvements on the property and we are convinced that he did at least supervise some of the work, he did not show the extent of these improvements or the value of same. As he did not do this, we do not think that Mrs. Brown is compelled to affirmatively establish the increase in the value of the property due to the ordinary course of things or its rise in value. To ignore the rise in value in real estate in this area since this property was improved would be closing our eyes to reality as much as it would be to ignore the fact that Mr. Edmondson as head of the community performed services in connection with the construction on this property as he testified.
“In view of the contribution to the improvement of this property by the community, including the efforts of Mr. Ed-mondson, we think an equitable distribution would he to allow the community a one-half interest in the improvements. The estimate of the real estate appraisers varied from $8,000 to $11,450. We think a fair value would be $10,000 and believe that Mr. Edmondson is entitled to reimbursement of one-fourth of this amount, which is the sum of $2,500.”
It may therefore be noted that the community interest in the improvements on the property was valued at $5,000.00 and defendant was correctly credited with one-half of that amount.
With respect to the increased value of the lots in Edmondson Subdivision Unit No. 2, the court pointed out, from the record, these facts:
“Mr. Edmondson is not entitled to reimbursement in any amount for the increased value of the lots in Edmondson Subdivision Unit No. 2. This property was a part of that purchased by Mrs. Ed-mondson, along with that included in what is hereinabove identified as 4817 Old Mooringsport Road. It is true that Mr. Edmondson subdivided a part of this property, and that two lots in this subdivision, which is known as Edmondson Subdivision Unit No. 2, have been sold; but he also subdivided a tract of land which he purchased on April 28, 1944, adjoining this tract belonging to Mrs. Edmondson, and designated this tract as Edmondson Subdivision Unit No. 1. In laying out these two subdivisions, Mr. Edmondson provided for a boulevard fifty feet in width extending the entire length of the two properties; but, instead of having the two properties to abut on the boulevard, designated as ‘Ed’s Boulevard,’ he laid out the subdivision to where there is a 6.23-foot strip of the community property that he purchased from Muslow Oil Company, Inc., between Ed’s Boulevard and Mrs. Edmondson’s property, Edmond-son Subdivision Unit No. 2. In other words, the community owns the 6.23-foot strip along the front of every lot in Ed-mondson Subdivision Unit No. 2. While this was probably not purposely done, it has materially reduced the value of Ed-mondson Subdivision Unit No. 2, as it is *898 necessary that Mr. Edmondson join, in the conveyance of any and every part of the property in Edmondson Subdivision Unit No. 2. We think the value placed on Edmondson Subdivision, Units Nos. 1 and 2, in the inventory substantially overvalued, for the reason that at the time it was inventoried, it was assumed that these lots could be sold for residential purposes; and, as some of them have been sold for such, they were so valued on the inventory. However, the testimony of Mr. Bobby Joe McConathy, a sanitarian of the Caddo-Shreveport Health Unit, was to the effect that only Lots IS and 16 of the Unit would be approved by the Health Department for individual septic systems. And as all of the realtors testified that the land could not be valued as subdivision property under these conditions, its best use being for agricultural purposes at a value of $900 per acre, it is apparent that the values shown in the inventory are excessive.
******
“There was some testimony to the effect that the property was suitable for the establishment of an oxidation sewerage system; but as the cost of this system was estimated to be in excess of $10,-000, we do not think it practical to assess the value contingent upon someone purchasing the property as a subdivision with the expectation of spending this amount of money before the lots could be sold.
“In view of the fact that the realtors testified that, in view of the prohibition of the Board of Health of the construction on the lots in both the Edmondson Subdivisions, Units Nos. 1 and 2, and have testified that the highest and best use for the property in both subdivisions in this condition is for agricultural use at a value of approximately $900 per acre, the inventory is hereby corrected under Community Property Real Estate, so that Items S, 6, 7, 8, and 9 have a total value of $13,500. And the value of decedent’s half interest therein is $6,750.”
With reference to the improvements made to the residence located-at 1014 Anthony Street, Bossier City, these observations were made:
“This property was the home of Mrs. Edmondson prior to her marriage to R. R. Edmondson and, except for the sum of $1,547.44 which was paid to the City of Bossier City on December 17, 1962, to pay off the paving lien, with interest, all of the other payments in connection with this property were for repairs in order to keep the property rented from the time that Mrs. Edmondson moved out after her marriage to Mr. Edmondson until her death. Mr. Charlie Hall, realtor, placed a value of $2,500 on this property as of December 29, 1938, and at $5,000 on February 7, 1964, the date of the death of Mrs. Edmondson. Mr. Hall estimated the increase in the value of this property as of the date of Mrs. Edmondson’s death due to the payment of the paving lien to be the sum of $500. We think this is proper; therefore, Mr. Edmondson is entitled to recognition of his claim against this property in the amount of $500. [The community estate is entitled to an allowance of the enhanced value of the property. Defendant, however, is entitled to only one-half thereof, or the sum of $250.00.] See Abunza v. Oliver, 230 La. 445, 88 So.2d 815; Giamanco v. Giamanco [La.App.], 131 So.2d 159. Mr. Hall estimated the rental value of this property at $12,464 for the period January 1, 1939, to February 7, 1964; and, as was held in Succession of Brunies, 209 La. 629, 25 So.2d 287, we hold that the expenses of the separate estate should be paid from the rents and revenues of the separate estate, as it is evident that the rental from this separate property of Mrs. Edmondson which went into the community far exceeded the expenses through these years.”
The liens on separate property, paid by community funds and designated in defendant’s itemized claim as B-l and B-2, were reviewed in the court’s discussion of the *899 claim made on account of the enhanced value of decedent’s separate estate, particularly the house and improvements at 4817 Old Mooringsport Road, resulting from the expenditure of community funds; and, Item B-3, with reference to the payment of a paving lien on the Anthony Street property in Bossier City, was discussed in the observation concerning the improvements on that property. The court concluded that, as to claims designated B-l, B-2, and B-3, defendant had been allowed full credit, and these claims were therefore denied. For the reasons to which we have referred, we find no error in the disposition thus made of these claims.
With respect to the claim for separate funds allegedly advanced to the community, that is, the $5,100.00 which was allegedly on hand at the time of the marriage and the sum of $2,393.85 which was allegedly expended on the purchase price of the Merrick Street property, the court concluded:
“There was no evidence offered in support of Mr. Edmondson’s testimony that he had this amount on hand and advanced these funds to the community at the time of his marriage. And, as the stubs of his checkbook (which was produced by plaintiff and filed in evidence at the time of the trial, much to Mr. Ed-mondson’s surprise) showed that he only had in his account the sum of $162.16, this item is denied. * * *.
“The evidence discloses that $5,000 was contributed by Mrs. Edmondson on December 31, 1938, for the specific purpose of paying off the mortgage on this property on Merrick Street, and that on the same day, $4,470.19 of these funds were used to pay the balance of the note secured by the mortgage to Home Federal Savings & Loan Association on this property. Therefore, this claim is denied.”
Nor did the trial court find, nor did we, any basis for disallowance of the claim of the estate against the defendant for the sum of $6,500.00. This amount was acknowledged by defendant as having been advanced to him from the decedent’s separate funds after their marriage. The evidence, as noted, fails to support defendant’s contention that he was coerced to sign the acknowledgment.
This case comes within the rule that the findings of a trial court upon questions of fact are entitled to great weight and it is incumbent upon the appellant, in order to secure a reversal of the decision of which he complains, to show manifest error in the judgment. Thornton v. Ellington, 209 La. 613, 25 So.2d 282 (1946); Falgout v. Johnson, 191 La. 823, 186 So. 349 (1939); Lejeune v. Lejeune, 187 La. 339, 174 So. 643 (1937); Powell v. Travelers Insurance Company (La.App.) 117 So.2d 610 (2d Cir. 1960—certiorari denied).
Except as previously noted with reference to the allowance of $500.00 made to defendant as his share of the enhanced value of a portion of decedent’s separate estate through the expenditure of community funds, the $500.00 being the entire enhanced value of which amount defendant is entitled to only one-half, there has been no showing of manifest error in the conclusions reached by the trial court. From our own review of the record, except as just noted, we are convinced of the correctness of the resolution made of the issues involved.
We are of the opinion, however, that the assessment of plaintiff with the costs incurred in the trial court is inequitable and that such costs should be equally divided between plaintiff and defendant.
For the reasons assigned, the judgment appealed is amended by reducing the indebtedness of the succession to defendant from $3,000.00 to $2,750.00 and declaring it extinguished by compensation, and reserving to plaintiff, individually and as executrix, the right to assert, in a subsequent proceeding, her claim against defendant for the balance of $3,750.00; and,
*900 As thus amended, the judgment appealed is affirmed. The costs incurred in the trial court are assessed to plaintiff and defendant in equal proportions with the exception of defendant’s expert-witness fees, which, together with the cost of this appeal, are assessed to defendant.
Amended and affirmed.