HOOD, Judge.
Evangeline Sonnier, wife of Jean Batiste Ardoin, died intestate on May 22, 1966. After her death Raymond LeBleu, a child of the decedent by a former marriage, filed a petition demanding that an inventory of her estate be made and that he be appointed as administrator of that estate. An inventory was made as prayed for, and all of the property listed in the inventory was described as belonging to^ the community which existed between the decedent and her surviving husband.
Mr. Ardoin, the surviving husband, and two of his children, Lucy Ardoin and Richard Ardoin, filed a formal opposition to the inventory and to the appointment of Raymond LeBleu as administrator of the estate. The matter was tried in the district court solely on the opposition to' the inventory. Judgment was rendered by the trial court maintaining that opposition, and decreeing that the property listed in the inventory did not belong to the community, but that all of such property was the separate property of Jean Batiste Ardoin. Raymond LeBleu and the other children of the decedent by her first marriage have appealed.
*565 The evidence shows that Jean Batiste Ardoin, a widower, married Evangeline Sonnier on June 13, 1961. Evangeline Sonnier also had been married previously, her first husband having died in 1952. Nine children were born of that prior marriage, one of whom was Raymond Le-Bleu. Ardoin and Evangeline Sonnier lived together as man and wife from the date of their marriage until the death of Evangeline Sonnier which occurred ' on May 22, 1966.
When Ardoin married the deceased in 1961 he owned a 72 acre farm, the furniture in the farm house, an automobile and a checking account in the Evangeline Bank and Trust Company in Ville Platte, Louisiana. The checking account was in the name of “Jean Batiste Ardoin,” and at the time of the marriage the sum of $1582.89 was on deposit to Ardoin’s credit in this account. Evangeline Sonnier owned nothing at the time of the marriage.
On November 9, 1965, Ardoin entered into an agreement with Lastie Rozas, which agreement is described on its face as an “Exchange of Property and Cash Sale.” Under the terms of this agreement Ardoin conveyed to Rozas the 72 acre farm which he owned prior to his marriage in 1961. As the consideration paid for that farm, Rozas transferred to^ Ardoin a small tract of land, consisting of approximately one-half acre, and in addition thereto Rozas paid to Ardoin the sum of $17,500, in cash. No mention was made in that agreement of the fact that the property conveyed by Ardoin was his separate property or that the property acquired by him from Rozas was to belong to Ardoin’s separate estate.
After the above described “Exchange of Property and Cash Sale” had been completed, it was discovered that Ardoin had not received the lot of land which he intended to get, so on December 3, 1965, the parties entered into an “Exchange of Property” agreement, under the terms of which Ardoin reconveyed the one-half acre lot of land to Rozas, and Rozas conveyed to Ardoin another lot of about the same size. The document recites that the properties exchanged are equal in value and that each has a value of $500.00. No additional consideration was paid or received by either party in connection with this last mentioned exchange of property. In this document, as in the earlier one entered into between the same parties, no mention was made of the fact that the property which Ardoin conveyed belonged to his separate estate or that the property which he received was to be his separate property.
On January 31, 1966, Jean Batiste Ardoin executed an act of donation purporting to donate to his wife, Mrs. Evangeline Son-nier Ardoin, an interest of some kind in the lot of land which he had acquired from Rozas on December 3, 1966. By the same document he also donated to his wife the same type of interest in the “Household goods contained in the above premises” and in a “I960 Comet automobile.” In that act of donation, signed by the donor and the donee, it is recited that “The property donated comprises community property and is valued by the parties at Four Thousand and No!/100 ($4000) Dollars.”
After Ardoin acquired the last mentioned lot of land he built a residence building on it, and he and his wife moved into that building and occupied it as their home until the death of Mrs. Evangeline Sonnier Ardoin.
As we have already noted, the inventory which was made of the estate of Evangeline Sonnier, deceased, listed the small tract of land on which Ardoin had built the home as belonging to the community which existed between him and the decedent, and this land with its improvements was appraised at the sum of $4000.00. The inventory also lists several items of furniture and household appliances as belonging to the community, all of which were valued at $329.00, bringing the appraised value of the entire estate to $4329.00. The automobile was not listed in the inventory.
*566 The defendants in these proceedings, Raymond LeBleu and his brothers and sisters, contend that the trial judge erred in holding that the lot of land on which Ardoin and the decedent were living at the time of the latter’s death was the separate property of Ardoin. Plaintiffs, Ardoin and his two children, contend that the judgment appealed from is correct in holding that this lot of land constituted a part of Ar-doin’s separate estate, since it was acquired by him in exchange for other property which belonged to his separate estate.
The general rule is that when a married man buys real property in his name, without a dual declaration in the deed that he has purchased the property with his separate funds and that he intends it for his separate estate, the property so purchased is conclusively presumed to belong to the community. Our Supreme Court has stated, however, that this general rule does not apply in cases where the husband exchanges his separate property for other immovables. In Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925), for instance, the Supreme Court said:
“It is true the five decisions cited in the original opinion handed down in this case—and there are others to the same effect—maintain that article 2402 of the Civil Code does not apply to contracts of exchange of real estate. Property so acquired during marriage, in the name of either spouse, is substituted for the property given in exchange for it, and has the same status or ownership. If the property given was community property, so is the property received in exchange for it community property; and, if the property given belonged to the separate estate of the party in whose name it is given, so is the property received in the exchange his or her separate property.”
Although the above quoted statement of law in the Kittredge case appears to be dictum, our Supreme Court has referred to it in later cases as being the established jurisprudence in this state. Lazaro v. Lazaro, 92 So.2d 402 (La.App.Orl.Cir. 1957); Succession of Hemenway, 228 La. 572, 83 So.2d 377 (1955); Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655 (1927); and Slaton v. King, 214 La. 89, 36 So.2d 648 (1948). In Schoeffner v. Schoeffner, supra, for example, the Supreme Court said:
“The situation might have been different in this case if the deed had recited the real and true consideration, for we held in the Kittredge case, supra, that where separate real estate of husband or wife is given in exchange for other real estate, property received in exchange is separate property, though the deed does not state property was bought with separate funds.”
In the instant suit the 72 acre farm which Ardoin owned prior to his marriage to the decedent was his separate property. He conveyed that farm to Rozas on November 9, 1965, and the consideration which he received for it was a tract of land comprising about one-half acre and a substantial sum of money. Since the farm was more valuable than the one-half acre lot which Ardoin acquired and since Ardoin did not pay any additional consideration other than the conveyance of his separate property, we think he acquired the one-half acre tract in exchange for his separate property. Under the jurisprudence above cited the conclusion must be reached that the lot acquired by Ardoin at that time became his separate property.
Since the one-half acre lot acquired by Ardoin on November 9, 1965, was his separate property, it necessarily follows that when he exchanged that lot for another one on December 3, 1965, the lot which he received in the last mentioned exchange also became his separate property.
The evidence shows that shortly after December 3, 1965, Ardoin built a house on the lot which he had acquired from Rozas. We have determined that the land on which the house was built was the *567 separate property of Ardoin. The settled rule of law is that improvements erected during marriage on the separate property of one of the spouses, even though made with community funds, belong to the owner of the soil, subject only to the duty of paying to the community at its dissolution the enhanced value of the property resulting therefrom. LSA-C.C. art. 2408; Williams v. Williams, 199 So.2d 401 (La.App.3d Cir. 1967); Succession of Jones, 193 So.2d 352 (La.App.1st Cir. 1966); Moore v. Moore, 187 So.2d 145 (La.App.2d Cir. 1966, Writ refused); Hayward v. Carraway, 180 So.2d 758 (La.App.1st Cir. 1965, Writ refused); Smith v. Garrison, 137 So.2d 505 (La.App. 3d Cir. 1962).
In the instant suit the soil on which the residence building was constructed belonged to the separate estate of Ardoin, so the building erected on that soil also became his separate property, whether the improvements were made with separate or community funds. If the building was constructed with community funds, then Ardoin is under a duty to reimburse the community the enhanced value of the property resulting therefrom. The question of whether community funds were used to construct the improvements, or whether Ardoin is under a duty to reimburse the community for the enhanced value of his separate property, is not before us on this appeal, and we express no opinion as to that issue.
Defendants contend further, however, that plaintiff Ardoin is estopped from claiming that the above mentioned tract of land is his separate property. As the basis for that argument defendants point out that in the act of donation dated January 31, 1966, Ardoin declared that “The property donated comprises community property * * It is argued that this solemn declaration made by Ardoin in the act of donation es-tops him from now contradicting that assertion.
In Humble Oil & Refining Co. v. Boudoin, 154 So.2d 239 (La.App.3d Cir. 1963), we recognized that estoppels are generally classified as one of three kinds: (1) Estop-pel by record; (2) estoppel by deed; and (3) estoppel “in pais” or equitable estoppel. In the instant suit there is no arguable basis for applying estoppel by record or estoppel “in pais.” Defendants contend, however, that the remaining type of estop-pel, that is estoppel by deed, is applicable.
The general rule is that all parties to a deed and their privies are estopped from denying the truth of any material fact asserted in the instrument. Lewis v. King, 157 La. 718, 103 So. 19 (1925); Sandifer v. Sandifer’s Heirs, 195 So. 118 (La.App.2d Cir. 1940, Cert. denied); Home Finance Company v. Ayala, 78 So.2d 222 (La.App.Orl.Cir. 1955). This general rule, however, is applicable only to assertions or statements of fact in the deed, and it does not apply to acknowledgements or statements of law. Straus v. City of New Orleans, 166 La. 1035, 118 So. 125; McDonald v. Richard, 203 La. 155, 13 So.2d 712 (1943). Also, statements of fact in a deed will estop the party making them from contesting those statements only when they are of the essence of the contract, that is, where the contract presumably would not have been entered into unless the facts recited actually did exist. The doctrine of estoppel does not extend to mere descriptive matter, or to statements or recitals which are immaterial and are not contractual or essential to the purposes of the instrument. 31 C.J.S. Estoppel § 37, p. 332; McDonald v. Richard, supra. We think the rules which are applied to recitals in a deed are also applicable to factual statements contained in an act of donation.
In the act of donation which Ardoin executed on January 31, 1966, the statement that “the property donated comprises community property” was not essential to the donation. It was immaterial to the purposes of the instrument whether the land being donated was separate or community property, and we do not think a presumption would be justified that the donation would not have been made unless the prop *568 erty was community property. Under these circumstances, we conclude that Ardoin is not estopped from asserting in this suit that the property affected by that donation was his separate property.
Our conclusion is that the tract of land which is listed in the inventory of the decedent’s estate does not belong to the community which existed between Ardoin and the decedent. We thus agree with that portion of the judgment appealed from which decrees that this tract is the separate property of Ardoin.
The next issue presented relates to the status of the checking account which Ar-doin had in the Evangeline Bank and Trust Company at the time of his wife’s death.
The inventory does not list this bank account as constituting a part of the estate of the decedent. Plaintiffs oppose this inventory on the ground that the items of property which are listed in it do not belong to the community, but that they belong to the separate estate of Ardoin. Under these pleadings no issues ordinarily would be presented as to the status of Ardoin’s bank account. At the trial, however, evidence was presented by all parties, without any objection whatsoever, tending to show the status of this bank account. Also, in the written briefs and arguments presented to this court all counsel apparently agree that an issue is presented on this appeal relating to the status of Ar-doin’s checking account, although plaintiffs contend that defendants are “estopped” from claiming a part of that account since it was not listed in the inventory. We have concluded that the pleadings have been enlarged to include the issue of whether all or any portion of Ardoin’s checking account in the Evangeline Bank and Trust Company belongs to his separate estate.
As we have already noted, the sum of $1582.89 was on deposit to Ardoin’s credit in his checking account at the time he married Evangeline Sonnier on June 13, 1961. Ardoin continued to make deposits in and withdrawals from this checking account after his marriage. Most of the deposits which he made during the period beginning on the date of his marriage and ending on November 10, 1965, were made from community funds. When the bank opened for business on November 10, 1965, there was on deposit to the credit of Ar-doin in this checking account the sum of $1023.87.
On November 10, 1965, Ardoin deposited $17,500.00 in his checking account. The evidence shows that the funds which he deposited on that date were the proceeds which he received from the exchange or sale of his 72 acre farm. The farm, of course, was his separate property, and the proceeds which he received in that exchange or sale were his separate funds.
No other deposits were made to that checking account between November 10, 1965, and May 22, 1966, the last date being that on which Evangeline Sonnier died, except that one deposit in the amount of $1500.00 was made on November 17, 1965. A number of withdrawals were made from that account between November 10, 1965, and the date of Evangeline Sonnier’s death, but the record does not show the purpose for which these withdrawals were made. The sum of $11,378.51 was on deposit to Ardoin’s credit in that account on May 22, 1966.
The law contemplates that when separate funds are mixed or commingled with community funds to the extent that the separate funds are no longer capable of identification, and it is impossible to establish what part of the funds belongs either to the separate estate or to the community, then all of said funds are regarded as belonging to the community. If only a relatively small amount of the deposit is community, however, it will be considered inconsequential and insufficient to constitute commingling, and will not warrant the designation of all such funds as community property. Succession of Land, 212 La. 103, 31 So.2d 609 (1947); Abunza v. *569 Olivier, 230 La. 445, 88 So.2d 815 (1956); Odom v. Odom, 121 So.2d 8 (La.App.2d Cir. 1960); Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1957); Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956); Giamanco v. Giamanco, 131 So.2d 159 (La. App.3d Cir. 1961).
In the instant suit we think there had been such a commingling of community and separate funds prior to November 10, 1965, and that it was impossible to establish on the last mentioned date what part of the funds on deposit belonged to Ardoin’s separate estate and what part of said funds belonged to the community. Under those circumstances the sum of $1023.87 which was on deposit in that account on that date must be held to have belonged to the community.
The deposit of $17,500.00 made on November 10, 1965, however, was made from Ardoin’s separate funds, and after that deposit was made it was possible to •establish that that part of the account belonged to his separate estate. The record shows that withdrawals amounting to the aggregate sum of $8,645.36 were made from this checking account after November 10, 1965, and before the death of Evangeline Sonnier. Since there is a presumption that all of the funds in the checking account belonged to the community, and the burden rests on Ardoin to establish the contrary, it seems proper to us to regard all of the withdrawals made from this account during the period beginning November 10, 1965, and ending May 22, 1966, as having come from Ardoin’s separate funds. See Odom v. Odom, supra. This leaves a balance of $8,854.64 in the checking account at the time of Evangeline Sonnier’s death which the evidence establishes as belonging to the separate estate of Ardoin. The remaining balance of $2523.87 which was in the checking account at the time of her death must be classified as community property.
The sole remaining issue presented relates to the items of furniture which are listed in the inventory. Plaintiffs contend that the furniture belongs to Ardoin’s separate estate, while defendants contend that it belongs to the community.
Ardoin testified that “Three (3) Rockers,” listed in the inventory and valued at the aggregate sum of $15.00, were owned by him prior to his marriage, and we agree that these items belong to his separate estate. The evidence does not establish that any other item of furniture so listed was owned by Ardoin prior to the marriage or was purchased with his separate funds. It shows that some of the pieces listed in the inventory were purchased by Ardoin or by his" wife after their marriage in 1961, and that a few of the listed items did not belong to either party but had been loaned to them by their children and grandchildren.
The settled rule of law is that property acquired during marriage is presumed to fall into the community of acquets and gains existing between the spouses. LSA-C.C. arts. 2334, 2402. At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess are presumed to belong to the community, unless it be satisfactorily proved which of such effects they brought into the marriage, of which have been given them separately, or which they have respectively inherited. LSA-C.C. art. 2405; Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478 (1950).
We conclude that the “Three (3) Rockers,” listed in the inventory and valued at $15.00, belong to the separate estate of Ardoin, but that all other movable property listed in the inventory, and which had actually been acquired by either Ardoin or the decedent during the marriage, belongs to the community.
For the reasons herein set out, we affirm that portion of the judgment appealed from which decrees: (1) That the immovable property listed in the inventory is the separate property of plaintiff, Jean Batiste Ardoin; and (2) that the “Three (3) Rock *570 ers,” listed in the inventory and valued at $15.00, are the separate property of Ardoin. The judgment appealed from is amended to decree: (1) That all of the other items of movable property which are listed in the inventory, the ownership of which has actually been acquired by Ardoin or by the decedent, belong to the community which existed between them; (2) that $8,854.64 of the funds on deposit in the checking account of Jean Batiste Ardoin in the Evangeline Bank and Trust Company at the time of Evangeline Sonnier’s death is the separate property of plaintiff Ardoin; and (3) that the remaining balance of said checking account, amounting to $2523.87 at the time of the death of Evangeline Sonnier, belongs to the community of acquets and gains which existed between Ardoin and the decedent. In all other respects, and except as herein amended, the judgment appealed from is affirmed. The costs of this appeal are to be paid from the mass of the estate of Evangeline Sonnier, deceased.
Amended and affirmed.