187 So.2d 480 (1966)
Joseph PACHOLIK (through Frank Hromadka, as agent), Plaintiff-Appellee,
v.
Mrs. Marguerite Labbous GRAY et al., Defendants-Appellants.
No. 1689.
Court of Appeal of Louisiana, Third Circuit.
June 8, 1966.
*481 Neblett & Fuhrer, by Robert B. Neblett, Jr., Alexandria, Alfred A. Mansour, Alexandria, for defendant-appellant-appellee.
Downs & Gremillion, by Richard E. Lee, Alexandria, for plaintiff-appellee-appellant.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
This is a suit for the return of $500 paid on the purchase price pursuant to a contract to buy and sell a house and lot. The defense is that the purchaser breached the contract by refusing to buy. It is contended that therefore the sellers are entitled to retain the $500 as damages. From a judgment for the plaintiff purchaser, the defendant sellers appeal.
Certain testimony was offered to prove that the buyer's late attorney had stated to the sellers' attorney that the buyer did not intend to purchase even if by curative work the sellers did make timely tender of merchantable title. The primary issue of the appeal is whether this testimony is admissible. The trial court held it to be inadmissible as hearsay.
*482 The determination of this principal issue depends, as will be shown, upon whether the statements by the attorney were within the apparent scope of his authority to speak for his client: If not, they are inadmissible as hearsay; if so, they are admissible as the vicarious admissions of a party through his agent.
The agreement to buy and sell was executed on October 15, 1963. Pertinently, it provided that the buyer had thirty days within which to secure a legal opinion to discover title defects, and then the seller had an additional thirty days to perform curative work to remedy defects discovered by the buyer and to tender merchantable title.
The buyer's attorney timely discovered title defects concerning the succession property to be sold: lack of a judgment of possession, and a $2,667.85 lien. These defects were not cured until January 2, 1964, some 18 days after expiration of the 60-day period for the sellers to tender merchantable title.
The buyer contends that, therefore, under the contract the buyer is entitled to return of the $500 deposited by him, further contending that the sellers cannot complain of any breach of the contract by the buyer since the sellers did not place him in default at the time for his performance. LSA-Civil Code Article 1913.[1]
The defendant sellers counter, however, that no putting in default or timely performance was necessary. They contend that the buyer had previously breached the contract by informing them in late November or early December that he would not buy the property even if the defects were cured (as they easily could be by bonding the lien and having the judgment of possession signed). The sellers thus contend that, prior to the expiration of the sixty-day period, the buyer made the sellers' timely performance a vain and unnecessary act by stating he would not go through with the purchase even if the curative work were timely completed as tendered by the sellers' attorney. Comment, The Doctrine of Anticipatory Breach of Contract, 20 La.L.Rev. 119 (1959); Note, Putting in DefaultA Vain Act, 8 Tul.L.Rev. 284 (1934). See: Marek v. McHardy, 234 La. 841, 101 So.2d 689; Fox v. Doll, 221 La. 427, 59 So.2d 443.
There appears to be no dispute herein as to these legal principles; but the buyer contends that they are not applicable because no admissible evidence was introduced to prove that in fact the buyer Pacholik had so breached his agreement to buy.
To prove their factual contention that the buyer Pacholik had breached the contract, thus entitling them to retain the $500 as damages, the defendant sellers rely upon the testimony of their attorney in the agreement-to-buy-and-sell transaction and also of their realtor. Subject to the plaintiff's objection, both of these witnesses testified positively that the attorney for the buyer, Pacholik, had informed them in late November or early December that Pacholik did not intend to buy the property on December 15th even if, as tendered, the title defects were cured by that date.
The plaintiff buyer objected to the admissibility of such evidence. The trial court permitted it to be made part of the record for purposes of appellate review, LSA-C. C.P. Art. 1636; but it then sustained the plaintiff's objection to its admissibility. (There then being no admissible evidence to support the sellers' exculpatory defense[2], *483 accordingly judgment was then entered for the plaintiff.)
Preliminarily, we should observe that able counsel for the plaintiff is quite correct in his contention that declarations by a decedent are normally hearsay and admissible for only restricted purposes (none here relevant). See Miller v. Miller, 226 La. 273, 76 So.2d 3, rejecting as hearsay declarations of a decedent sought to be introduced by his heirs.
However, the hearsay-exclusion rule does not prevent an adverse party from introducing testimony as to statements made out of court by a party-opponent. 4 Wigmore on Evidence, Sections 1048, 1049 (3rd ed., 1940); McCormick on Evidence, Section 239 (1954). Likewise, representative or vicarious admissions by an agent acting for a principal are admissible when off erred by an opposing party in a suit against the principal. Wigmore, Section 1078; McCormick, Section 244. Therefore, admissions by a deceased party or his deceased agent are not excluded as hearsay, but are instead competent evidence when introduced by an opposing party; although they are a weak kind of evidence which must be scrutinized carefully, they do have probative force. LaRocca v. Ofrias, 231 La. 292, 91 So.2d 351; Abunza v. Olivier, 230 La. 445, 88 So.2d 815; cf., Micheli v. Toye Brothers Yellow Cab Co., La.App. 4 Cir., 174 So.2d 168 (holding written statement of a deceased agent not admissible when sought to be introduced by his principal, but also containing extensive citation of cases on question).
In the present instance, it is stipulated that the late J. B. Nachman, a highly respected attorney of Alexandria, was employed by the buyer Pacholik to represent him in the title-check and the agreement to buy and sell.
The extent of Mr. Nachman's actual or ostensible authority in his representation of the buyer is the decisive issue of the appeal. "The rule, characterized as `supported by practically universal authority,' is that an attorney may make admissions of fact which will affect his client, provided his authority is made affirmatively to appear by evidence other than the declaration of the attorney, and provided the statement is shown to have been made within the actual or ostensible scope of the authority delegated, during the continuance of his agency, and while engaged in a bona fide attempt to discharge the duties of his employment. * * *" 31A C.J.S. Evidence §361, pp. 869 et seq. (Italics ours.) See also Annotation, Extrajudicial admissions of fact by attorney as binding client, 97 A. L.R. 374.
In refusing as hearsay to admit the late Mr. Nachman's statements, the trial court concluded that there was no showing that Mr. Nachman was authorized by his client to decline to carry out agreement to buy if the curative work was timely performed. The court relied upon the principle that an attorney employed to check title and advise the buyer in a real estate transaction usually does not have any implied or apparent authority to bind his client substantively by varying or waiving the written contract. See, e. g., Lake v. Le Jeune, 226 La. 48, 74 So.2d 899; 7 C.J.S. Attorney and Client §§ 101, 103. The trial court therefore held that any statements by Mr. Nachman breaching his client's agreement to buy were beyond the scope of his ostensible authority and were thus inadmissible as hearsay.
The trial court refused to receive Mr. Nachman's own statements as proving he was authorized to rescind the sale. Thus relied upon was the principle that, before the statements of an alleged agent can be received as vicarious admissions of the adverse *484 party himself, "* * * the party offering evidence of the alleged agent's admission must first prove the fact and scope of the agency of the declarant for the adverse party. This he may of course do by the testimony of the asserted agent himself, or by anyone who knows, or by circumstantial evidence. Evidence of the purported agent's past declarations asserting the agency, are inadmissible hearsay when offered to show the relation. * * *" McCormick, Section 244, p. 519.[3]
As we see it, our trial brother erred in excluding the statements of the buyer's attorney as beyond the scope of his apparent authority. The statements were not sought to be introduced as showing that Mr. Nachman himself was authorized on behalf of his client to breach the contract to buy. Instead, they were offered to prove that the buyer had decided not to buy and that the buyer's decision not to do so had been communicated to the sellers by the buyer's attorney (as a result of which breach the sellers retained as damages the $500 deposited instead of returning it to the buyer).
In short, it may have been entirely without the apparent scope of Mr. Nachman's authority to reject the sale himself. Nevertheless, in our opinion, it was within the apparent scope of his authority to communicate to the opposing party his client-buyer's intention not to complete the sale despite any curative work timely tendered:
The stipulations and the evidence show that Mr. Nachman was employed by the buyer Pacholik to represent him in connection with the agreement to buy and sell entered into between him and the defendant sellers. The uncontradicted testimony of the realtor also shows that in such instances it is customary for communications between the buyer and the seller in connection with such contracts to be conducted through the attorneys for the clients.[4] "It is undoubtedly the rule that, if a client refers one to his attorney as authorized to speak for him in reference to a particular matter, the admissions of the attorney made to such person, concerning such matter and pursuant to the reference made, are competent evidence against the client." Annotation, Extrajudicial admissions of fact by attorney as binding client, 97 A.L.R. 374 at 399. See also 7 Am.Jur.2d "Attorneys at Law", Section 122 ("Statements or admissions by attorney") for comprehension summary of relevant principles.
We therefore hold that the communications by Mr. Nachman of his client's intentions with regard to the proposed sale were within the ostensible scope of his authority in the matter. They are thus not within the hearsay-exclusion rule when offered by an opposing party in a suit against the client as a vicarious admission of the client through his attorney.
These statements adequately prove that the buyer Pacholik breached his contract and is not entitled to the return of the $500 deposited. Although a weak form of testimony, these admissions of the deceased agent introduced have probative force where, as here, uncontradicted and indeed *485 somewhat corroborated by the subsequent actions of the parties (viz., the sellers divided the $500 deposit instead of returning it to the buyer; the buyer did not file suit for the return of the $500 until a year later, after Mr. Nachman's death some two months before suit, instead of pressing for its immediate return).
Before concluding, in the interest of completeness we should probably note that extrajudicial admissions by an attorney are merely competent evidence; they do not necessarily constitute a binding admission which the client cannot contradict. See: "In any event, the admissions of an attorney made out of court, and not for the purpose of controlling the procedure in a case committed to his management, or for the purpose of dispensing with proof of the facts admitted, are not conclusive against the client as to the truth of the matter admitted; at most, they are merely items of evidence against him." 7 Am.Jur.2d, cited above, at pp. 123-24.
In view of the result we have reached, we need not discuss the plaintiff-appellee's answer to the appeal, praying for judgment against the defendant realtor as well as the defendant vendors. We should further note that by appropriate proceedings filed in this court the widow and sole heir of Joseph Pacholik, the original plaintiff-appellee, was substituted for him as party plaintiff upon uncontradicted affidavit of his decease and her heirship. Rule XIII, section 1, Uniform Rules of the Courts of Appeal (1963).
For the foregoing reasons, the judgment of the trial court in favor of the plaintiff-appellee is reversed, and judgment is rendered in favor of the defendants-appellants dismissing the plaintiff-appellee's suit against them. All costs of these proceedings are assessed against the plaintiff-appellee.
Reversed.
NOTES
[1] LSA-Civil Code Art. 1913: "In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in, or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default."
[2] It was stipulated that, at the time of trial in January 1965, the buyer Pacholik was no longer physically or mentally competent to testify. The buyer's attorney, Mr. J. B. Nachman, had died shortly before this suit was filed in October 1964 to recover the $500 deposited by the buyer in connection with the October 1963 agreement to buy and sell. There was thus no way to examine or cross-examine either of these individuals as to communications or authorizations as between these two individuals.
[3] See also 4 Wigmore, Section 1078, at p. 123: "* * * the fact of agency must of course be somehow evidenced before the alleged agent's declarations can be received as admissions; and therefore the use of the alleged agent's hearsay assertions that he is agent would for that purpose be inadmissible, as merely begging the very question. Nevertheless, they might be received provisionally as verbal acts * * * indicating that he was acting on another's behalf, not his own, leaving it to subsequent proof to establish his connection as agent with the present party. * * *"
[4] Indeed, it might violate the ethics of the legal profession for a lawyer to communicate directly with the client of an opposing attorney rather than only through the opposing attorney. See Section 9 ("Negotiations with opposing party") of Article XIV ("Professional Ethics") of Articles of Incorporation of Louisiana State Bar Association, found at Volume 21A (1964 revision), West's LSA-Revised Statutes, pp. 117 at 166-167.