255 So.2d 151 (1971)
A. E. MATHIEU, d. b. a. Mathieu Well Service, Plaintiff-Appellee,
v.
R. C. WILLIAMS, d. b. a. W & C Well Service, Defendant-Appellant.
No. 11702.
Court of Appeal of Louisiana, Second Circuit.
November 16, 1971.
*152 Cotton & Bolton, by W. Davis Cotton, Rayville, for defendant-appellant.
William R. Coenen, Sr., William Henry Hallack, Jr., Rayville, for plaintiff-appellee.
Before AYRES, PRICE and HALL, JJ.
AYRES, Judge.
By this action plaintiff seeks to recover from defendant liquidated damages under a noncompetitive agreement entered into by and between plaintiff and defendant. From a judgment awarding plaintiff damages at the rate of $100 per day for a period of 12 days, defendant appeals.
Under date of April 1, 1963, defendant sold to plaintiff, for a recited consideration of $200,000, two complete workover rigs and certain described related equipment, tools and supplies, together with the "good will and right to do business which he has heretofore been enjoying" and, in addition, "all of his interests in workover operations presently engaged in and contracted for to be performed in the future and all South Louisiana operations, which operations are defined in full in side agreement this date entered into."
Also recited in the act of sale are these provisions:
"Both parties agree that they have this date entered into a side agreement identified as `Agreement not to compete', which said agreement deals with the sale of this equipment in this act of sale."
The agreement referred to, after first declaring:
"That the said R. C. Williams is selling and the said A. E. Mathieu is buying under separate contract effective April 1, 1963 two workover rigs presently on location in South Louisiana for the consideration stated in said deed,"
continues with the expression:
"For and in consideration of the said Mathieu purchasing these rigs, the said R. C. Williams agrees and contracts that he, individually, as owner of the W & C Well Service and in all other capacities agrees not to compete or to engage in any manner in drilling and/or rig or well workover operations or well servicing in the State of Louisiana, its streams, bayous and off-shore operations within a period of five years from April 1, 1963 in any South Louisiana operations, which operations are defined to be the performing of any such services south of U.S. Highway 190 running through Baton Rouge, Opelousas, Eunice, Kinder, Lake Charles, etc."
With reference to penalties for violation of the agreement, it is stipulated:
"Should the said Williams engage or participate in any such operations, then the said Mathieu shall be entitled to use the injunction process or any of the other securities devices for prohibiting said operations or he shall sue for damages, which said damages are agreed upon in advance as being $100.00 per day for each and every day that the said R. C. Williams so engages in such prohibited operations." (Emphasis supplied.) *153 Plaintiff alleged that defendant violated the agreement not to compete by performing drilling and/or rig or well workover operations in the South Louisiana area near Avondale, west of New Orleans, from June 1, 1965, through June 15, 1965, or for a period of "16" days.
The principal issues presented by the defendant on this appeal are his contentions (1) that the agreement not to compete is an illegal restraint of trade not only under the provisions of LSA-R.S. 51:122 but under the public policy of this State; (2) that the agreement was not supported by sufficient consideration; and (3) that, alternatively, plaintiff failed to establish on the part of defendant a violation of the agreement for more than two days.
We find no merit in defendant's first contention that the agreement not to compete constituted an illegal restraint of trade and was contrary to public policy. By the terms of the agreement, noncompetition by defendant was limited both as to time and geographic location. The period of time covered by the agreement was five years and the area affected was that portion of South Louisiana south of U.S. Highway 190. This was one of the areas in which the defendant vendor was operating at the time of the sale.
Noncompetitive agreements in connection with sales of a business, including its good will, have been the subject of much litigation in this State. The validity of this character of agreements, reasonable as to time and area involved, has been generally upheld.
Eugene Dietzgen Co. v. Kokosky, 113 La. 449, 37 So. 24 (1904);
Moorman & Givens v. Parkerson, 131 La. 204, 59 So. 122 (1912);
Hickman v. Branan, 151 So. 113 (La. App., Orl.1933);
Hirsh v. Miller, 167 So.2d 539 (La.App., 4th Cir. 1964), writ refused, reversed on other grounds, 249 La. 489, 187 So. 2d 709 (1966);
Ingram Corporation v. Circle, Incorporated, 188 So.2d 96 (La.App., 4th Cir. 1966);
Desselle v. Petrossi, 207 So.2d 190 (La. App., 4th Cir. 1968), writs refused, 252 La. 108, 209 So.2d 39 (1968);
McCray v. Blackburn, 236 So.2d 859 (La.App., 3d Cir. 1970).
Nor do we find any merit in defendant's second contention that the agreement not to compete was not supported by adequate consideration. The act of sale and the agreement not to compete were part and parcel of a single transaction. Plaintiff, Mathieu, in his testimony, identified the act of sale and the agreement not to compete and described both as a "package deal." He further testified that the agreement not to compete constituted a substantial consideration inducing him to make the deal. Plaintiff's motive was to acquire not only the physical assets used in defendant's business in South Louisiana but defendant's business and good will as well. His purpose was to establish himself in that section of the State. The consideration paid for the two rigs and their related equipmentdefendant's business, good will, and defendant's obligation not to competewas $200,000. This is a real, substantial, and adequate consideration.
The third contention concerns the extent of the damages sustained by plaintiff. Inasmuch as the agreement fixed the damages at a rate of $100 for each day the agreement was violated, this issue concerns only the number of days the violation continued. One of plaintiff's witnesses saw defendant's rig in operation in the Avondale area on June 2, 1965; another saw it in operation on June 4, 1965. It was also said that it would take a day to move the rig, another to make it ready for operation, and another day to dismantle and move it away.
*154 The work undertaken by defendant in violation of the agreement was performed for the American Petrofina Oil Company. Upon plaintiff's making demands for damages covering a period of 16 days, defendant's attorneys forwarded to plaintiff a work order issued by Petrofina as proof that a period of 12 days, instead of 16 days, was the duration of defendant's violation. Over objection of defendant's counsel that the testimony offered to establish this fact was hearsay, a witness for plaintiff was allowed to testify that the work order evidenced that payment was made to defendant for 12 days' work. The trial court, in rendering judgment predicated upon the testimony objected to, held that the objections were without merit. On appeal, defendant contends that the testimony objected to was hearsay and should have been excluded and that without this testimony there was no basis for the trial court's finding that defendant was in violation of the agreement for a period of 12 days.
In Pacholik v. Gray, 187 So.2d 480 (La. App., 3d Cir. 1966), plaintiff sought the return of $500 paid on the purchase price pursuant to a contract to buy and sell a house and lot. The defense was that the purchaser breached the contract by refusing to buy, and that, accordingly, the vendors were entitled to the amount paid as damages. Certain testimony was offered to prove that the buyer's attorney, who was deceased at the time of trial, had stated to the vendors' attorney that the buyer did not intend to purchase the property. The trial court held this testimony was inadmissible hearsay. The primary issue on appeal was whether this testimony should have been admitted. The appellate court reversed the ruling of the trial court and held that the statements made by the buyer's attorney were within the apparent scope of his authority to communicate to the opposing party his client's intentions as to the perfecting of the sales agreement. The court quoted 97 A.L.R. 374, 399; Annotation: "Extrajudicial admissions of fact by attorney as binding client," to the effect that if one refers another to his attorney as authorized to speak for him on a particular matter, the admissions made by the attorney to that person, pursuant to the reference and upon the particular matter, are competent evidence against the client. See also 7 Am.Jur.2d, "Attorneys at Law," Section 122, pages 122, 123.
In Pacholik, at page 483, the court stated:
"* * * the hearsay-exclusion rule does not prevent an adverse party from introducing testimony as to statements made out of court by a party-opponent. 4 Wigmore on Evidence, Sections 1048, 1049 (3rd ed., 1940); McCormick on Evidence, Section 239 (1954). Likewise, representative or vicarious admissions by an agent acting for a principal are admissible when offered by an opposing party in a suit against the principal. Wigmore, Section 1078; McCormick, Section 244. Therefore, admissions by a deceased party or his deceased agent are not excluded as hearsay, but are instead competent evidence when introduced by an opposing party; although they are a weak kind of evidence which must be scrutinized carefully, they do have probative force. LaRocca v. Ofrias, 231 La. 292, 91 So.2d 351; Abunza v. Olivier, 230 La. 445, 88 So.2d 815; * * *."
In the instant case, no contention is made, nor could one be properly made, as to lack of the attorneys' authority to speak for, or to represent, their client. The attorneys, as representatives of their client, were in possession of a statement issued by Petrofina showing that the workover operations continued for a period of 12 days. In their capacity as attorneys and representatives of their client, they furnished plaintiff the information shown by the statement. This was done in the interest of their client pursuant to their representation as attorneys.
We conclude that evidence with respect to defendant's counsels' statement with regard *155 to the number of days the violation continued was admissible.
The evidence offered, obtained through defendant's counsels' communication, was the best evidence available to plaintiff and constituted at least a prima facie showing. It was admissible under an exception to the hearsay rule heretofore noted in Pacholik v. Gray. The defendant was undoubtedly in full possession of the facts with reference to the period in which the workover operations were conducted. It was he who was in possession of evidence which could and would have established the period of time involved beyond any peradventure of doubt. Although present in court, he elected not to testify.
Thus plaintiff's prima facie showing that defendant's violation of the agreement continued over a period of 12 days has not been rebutted by defendant. Moreover, in Jarrett v. Climatrol Corporation, 185 So.2d 63, 64 (La.App., 4th Cir. 1966), it was held that the failure of a company official to testify when he was readily available to do so permitted the inference that his testimony would have been detrimental to defendant's case. The individual defendant in the instant case was present in court and available to testify in his own behalf.
Appropriate to this situation is the observation of the Supreme Court in Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805, 810 (1968), wherein Mr. Justice Summers, as organ of the court and author of the opinion, stated:
"Another circumstance supporting our conclusion that Tennant was negligent is his failure to testify at the trial and explain his conduct or otherwise speak in mitigation of his negligence. For it has long been the rule in this State that when a defendant in a civil case can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge, and fails to go upon the witness stand, the presumption is raised, and will be given effect, that the facts, as he would have them, do not exist. Bastrop State Bank v. Levy, 106 La. 586, 31 So. 164 (1901). The rule is founded upon fundamental and salutary principles essential to the ends of the law. Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be applied in the just settlement of disputes. Litigants owe a duty to assist in every legitimate way to elucidate the truth of the controversy. Bastrop State Bank v. Levy, supra."
Thus, in view of the aforesaid statement of principles of law, the conclusion is inescapable that defendant has not rebutted plaintiff's prima facie showing of the period of time the noncompetitive agreement was violated.
Finding no error in the judgment appealed and being of the opinon that it is eminently correct, the judgment is accordingly affirmed at defendant-appellant's costs.
Affirmed.