345 So.2d 548 (1977)
Elsie Woodard TOLBERT et al., Appellants-Appellees,
v.
Firal RYDER et al., Appellants-Appellees.
No. 5904.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
Rehearing Denied May 10, 1977.
*549 Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for Continental Casualty.
Gold, Hall, Hammill & Little by Henry B. Bruser, III, Alexandria, for plaintiffs-appellants.
John J. McKeithen, Columbia, Watson, Murchison, Crews & Arthur by William P. Crews, Jr., Natchitoches, for Dept. of Public Safety.
Jack O. Brittain and Sam J. Friedman, Natchitoches, for Great American Ins. Co.
Cook, Clark, Egan, Yancey & King by Steven H. Beadles, Shreveport, for Northern Ins. Co. of America.
John Madison, Jr., Shreveport, for Dr. W. L. Ryder.
Before HOOD, FORET, and HEARD, JJ.
FORET, Judge.
At approximately 12:10 A.M. on November 26, 1974, a tractor-trailer owned by J. E. *550 Fowler Petroleum Products, Inc. being driven by Floyd H. Tolbert struck a black angus cow on Louisiana Highway 1 some twelve miles south of Natchitoches, Louisiana. The tractor-trailer unit jack-knifed and left the highway where it turned over, spilling the trailer content (oil) onto the roadway and east shoulder. The driver, Floyd Tolbert, was pinned in the tractor cab and killed. These consolidated cases are tort actions wherein the plaintiffs are seeking to recover damages resulting from the aforesaid accident.
In the suit entitled "Elsie Woodard Tolbert, et al v. Firal Ryder, et al," Court of Appeal Number 5904, the plaintiffs are Elsie Woodard Tolbert, the widow of the decedent, Floyd H. Tolbert, and Frank Tolbert, a 25-year-old married son of the decedent.
In the case entitled J. E. Fowler Petroleum Products, Inc. v. Great American Insurance Company, et al., La.App., 345 So.2d 555, the plaintiff sues to recover damages to its tractor-trailer unit and for the value of the oil which was contained in the trailer.
In both cases the plaintiffs filed suit against Firal Ryder, W. L. Ryder, and a partnership of Firal Ryder and W. L. Ryder, contending that the cow on the highway was owned by the partnership which was guilty of negligence in allowing the cow to be on the highway; and as a result, the individuals in the partnership were responsible in damages. Also made defendants were Great American Insurance Company, which had issued a policy of liability insurance to Firal Ryder with limits of $50,000.00, and Continental Casualty Company, which had issued an excess liability policy to Firal Ryder with limits in excess of the amount sued for in this litigation. Also made a party defendant was the State of Louisiana, through the Department of Public Safety, its liability being based on the allegation of fault and on the violation of a statutory duty on the part of the Louisiana State Police in failing to remove the cow from the highway prior to the accident.
In the Tolbert case, there was an intervention filed by Northern Assurance Company of America, which was the workmen's compensation insurer of J. E. Fowler Petroleum Products, Inc., and which was paying benefits to Tolbert's widow under the Louisiana Workmen's Compensation Act.
Great American Insurance Company filed a pleading entitled "Exception, Petition for Declaratory Judgment, and Motion for Summary Judgment" in each case. The basis of this pleading, considered as a motion for summary judgment, was the proposition that Great American Insurance Company did not afford any coverage to Firal Ryder for liability in this litigation because of Great American's contention that the farm property from whence the cow allegedly came was not included in Great American's policy when it was written, and nor was the property acquired by Firal Ryder after the effective date of the policy. The trial judge denied the motion for summary judgment.

FINDINGS OF THE TRIAL COURT
For reasons set forth in a written opinion, the trial court found that Great American Insurance Company, indeed, did not afford coverage to Firal Ryder, and that the responsible defendants were Firal Ryder, W. L. Ryder, and Continental Casualty Company, the latter being the insurer of Firal L. Ryder. The Court further held that W. L. Ryder was entitled to indemnity from Firal Ryder and his insurer, Continental Casualty.
The trial court awarded Elsie W. Tolbert judgment in the amount of $199,389.69, and the surviving son, Frank Tolbert, was awarded the amount of $22,500.00. The judgment was appropriately worded to reimburse the intervening workmen's compensation insurer, Northern Assurance Company of America.
The first $5,000.00 of the award was to be made against Firal Ryder, individually, in that Great American Insurance Company was found not to be the primary insurer.
The trial court further awarded judgment in favor of J. E. Fowler Petroleum Products, Inc. in the amount of $12,300.01 *551 against those same defendants, but again granting a judgment to W. L. Ryder over and against Firal L. Ryder and Continental Casualty Company for indemnity in the full amount of W. L. Ryder's liability to the plaintiffs in both cases.
All other original and incidental demands against Great American and the State of Louisiana, through the Department of Public Safety, Division of State Police, and all other incidental demands, were dismissed by virtue of the trial court having found that Great American did not afford coverage, and that there was no negligence or fault on the part of the Louisiana State Police in the causation of the accident.
Following the rendition of the judgment, Firal Ryder and Continental Casualty filed a motion for a limited new trial on the basis that the trial court had erroneously held that the motion for summary judgment involving Great American had been referred to the merits when in truth and in fact it had been overruled. The pleading further asserted that subsequent to the overruling or denial of the motion for summary judgment by the trial court on September 15, 1975, Great American Insurance Company waived its policy defense; advised its insured, Firal Ryder, of this in writing; made its policy limits available for settlement; and took over the defense of Firal Ryder in the ensuing litigation. The trial court granted the motion and reopened the case for the taking of additional evidence. After hearing the evidence the court held that the judgments as originally granted were correct.
Plaintiffs have appealed the trial court's judgment dismissing plaintiff's petition against Great American and the State of Louisiana, and additionally seek an increase in the award in favor of Elsie Woodard Tolbert to $327,317.37. Defendants, Continental Casualty Company and Firal Ryder, have appealed suspensively and devolutively.
As pointed out in a brief filed in this Court on behalf of defendant-appellee W. L. Ryder, none of the parties litigant contend or even intimate that the trial court's judgment was in error where it held that W. L. Ryder was entitled to indemnification from Firal Ryder and his insurer for any amounts for which he (W. L. Ryder) was cast in judgment. Therefore we need not consider this issue on appeal.
In reviewing all the briefs filed by counsel in this Court for appellate purposes, we find that no issue is made of the negligence of Firal Ryder. We quote from a portion of the trial court's excellent reasons for judgment, on that particular point:
"Both Firal Ryder and W. L. Ryder acknowledged that the cattle on the 1100 acres of land in question were owned 50-50 by them, with Firal being responsible for the day-to-day operation of the cattle venture. Although the lease specifically brought attention to the fact that the fencing was in a poor state of repair and required the Lessee to restore the fencing immediately to a first-class state of repair; nevertheless, Firal Ryder testified that he did not direct his employees to mend the fences, that he never inspected the fences, and that prior to this accident, he and his employees knew that cattle had been getting out of this pasture. [Tr. pgs. 204-220] The Court finds Firal Ryder to be personally negligent in failing to inspect the fences and in failing to have the necessary repairs made to the fences. As for W. L. Ryder he personally assumed the obligations of the lease by subleasing from Calhoun and is personally negligent in failing to require that the partnership perform the obligations of the lease before beginning the cattle venture on the 1100 acres of land."
The trial court further found that some of Firal Ryder's cows had gotten out of the fences onto the highway right-of-way on numerous occasions prior to November 25, 1974, and that in each instance the same procedure as that followed in this case (which procedure will be discussed in more detail below) had been followed in order to get the cows off of the highway right-of-way.
*552 In granting judgment in favor of W. L. Ryder and over against Firal L. Ryder and Continental Casualty, the trial court found as follows:
"It is undisputed between Firal L. Ryder and W. L. Ryder that W. L. Ryder's sole participation in the cattle farm was to make the lease payments to his brother-in-law, Mr. Calhoun. He did not assume any of the management of the partnership, did not hire or fire any employees, did not put up any money for the purchase of cattle, did not take part in any decision making process concerning when or how any cattle would be bought or sold, had never been advised or informed that any cattle had previously escaped the confines of the fences of the 1100 acres of land, and the Court holds that W. L. Ryder's negligence in failing to make sure that the fences were kept in a state of first-class repair was passive; whereas, Firal Ryder's negligence in this regard was active."
A careful review of the record convinces us that the findings of fact of the trial court concerning the negligence of the defendants-Ryder is correct.
Defendants-appellants, Firal Ryder and Continental Casualty assign their first specification of error as follows:
"THE TRIAL COURT ERRED IN CONCLUDING THAT TROOPER EARL TOWNSEND WAS NOT GUILTY OF NEGLIGENCE AND IN FAILING TO HOLD THAT PLAINTIFFS HAD A RIGHT TO RECOVER AGAINST THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY, DIVISION OF STATE POLICE, UNDER THE DOCTRINE OF MASTER AND SERVANT."
After having reviewed the record, we find the factual findings of the trial court to be substantially correct on the crucial issues involving the negligence of Trooper Earl K. Townsend and quote from its reasons for judgment:[1]
"With reference to the claim against the Louisiana State Department of Public Safety, the facts are that sometime between 2:00 p. m. and 3:00 p. m. on the date of the accident, Trooper Earl K. Townsend, on routine patrol near the area where the Ryders rented the acreage in question, found one black and one red cow on the highway right-of-way. The trooper stopped his vehicle and tried to make the cows go back into the pasture, but found the gate to the pasture locked, and the trooper was unable on foot to get the cows off the highway right-of-way. Trooper Townsend then radioed from his car at the scene to the Natchitoches Parish Sheriff's office where Deputy Herman Birdwell received the call from Trooper Townsend. Deputy Birdwell called Firal Ryder's office, as Administrator of the Natchitoches Parish Hospital, and upon being told that Mr. Ryder was not there, Deputy Birdwell informed the secretary of Mr. Ryder's cows being on the highway; whereupon, the secretary referred the deputy to another office number of Firal Ryder, where Mr. Birdwell again called and left the same message. Both secretaries informed Mr. Birdwell that they would see to it that Mr. Ryder got the message and would have the cows removed. It is important to note at this point that some of Mr. Ryder's cows had gotten out of the fence onto the highway right-of-way on numerous occasions previous to this incident and in each instance, the same procedure was followed and Mr. Ryder would call his cowboy or overseer to get the cows off the right-of-way. Trooper Townsend then received a radio call back from Deputy Birdwell telling him that Ryder's office had been contacted and that the cows were being taken care of. Trooper Townsend went off duty at 3:00 p. m. and the accident happened some 8 or 9 hours later."
We conclude, as did the trial court, that Trooper Townsend committed no acts of commission or omission which would make him chargeable with negligence causally connected with the accident involved. *553 Having been informed that the owner of the cattle had been notified of the presence of his cattle on the highway, the officer could reasonably rely that the cattle would be penned up by the owner, Firal Ryder, before nightfall three or four hours away.
Defendants-appellants argue that LSA-R.S. 3:2804, which provides for the impounding of livestock found at large upon certain designated highways, wherein it is stated that the superintendent of state police shall . . . cause any livestock found at large upon those certain designated highways to be taken into custody and impounded, creates negligence per se upon the state police upon their failure to do so and an accident results therefrom such as occurred in this case. Defendants-appellants argue this point most strenuously and cite the case of Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298, wherein defendants contend that the Supreme Court has clearly established a line of jurisprudence concerning the effect of the violation of statutes.
Dixie involved a violation of a portion of the Highway Regulatory Act by the defendant, i. e. the drived of a tractor-trailer having failed to set out signal signs when his vehicle became disabled and stopped on the traveled portion of the highway. We have no disagreement with the defendants-appellants as to Dixie. However, R.S. 3:2803 is found under the title pertaining to agriculture and animals, whereas the Highway Regulatory Act is found under Title 32 of the Louisiana Revised Statutes. Counsel has cited no jurisprudence to us, and certainly no statutory provisions, which would extend the Dixie holding to a violation of R.S. 3:2804.
But even assuming that defendants-appellants would be correct in that the Dixie holding could be extended to create negligence per se for violation of Section 2804, certainly the presumption of negligence can be rebutted for the reason that the effect of such a presumption is to specifically place the burden of proof upon the alleged violator of a statutory provision to exculpate himself from negligence. Cornish v. Ford, Bacon & Davis Const. Corp., La.App.1974, 304 So.2d 361, writ refused, La., 305 So.2d 123. In the case at bar the trial court correctly found that Trooper Townsend was not negligent, and even assuming defendants-appellants' contention to be correct, the presumption of negligence was effectively rebutted. We therefore find no merit in defendants-appellants' contentions in this regard.
Defendants-appellants' second assignment of error is that:
"THE TRIAL COURT ERRED IN FAILING TO FIND THAT GREAT AMERICAN INSURANCE COMPANY WAS RESPONSIBLE FOR THE FIRST $50,000.00 OF ANY JUDGMENT TO BE RENDERED AGAINST FIRAL RYDER."
Six days prior to the accident in question, Great American Insurance Company had issued a "Homeowners" policy to Firal Ryder. Attached to the policy was an endorsement insuring three tracts of farm property which were described as being used in Ryder's cattle farming operations. In addition, the endorsements purported to provide coverage for other properties acquired by the insured or his spouse subsequent to the date of the issuance of the policy. The 1100 acre tract from which the cattle in this case came onto the highway was not described in the policy, and it is undisputed that Firal Ryder leased this property prior to the date of issuance of the policy. Clearly, therefore, the policy did not cover the farm property in question.
Defendants-appellants further argue that there is a policy provision in the homeowners portion of the policy which affords coverage to "vacant land". We are not impressed with this argument. The land in question had farm buildings on it, and the Ryders conducted a cattle operation thereon to the extent of running between three and four hundred head of cattle on this property. Therefore we find no merit to defendants-appellants' contentions in this regard.
Subsequent to the overruling of Great American's motion for summary *554 judgment by the trial court, counsel for Great American notified counsel for Firal Ryder that it would waive its coverage defense, and would defend Firal Ryder, and further that it offered the total policy limits, $50,000.00, towards an effort to settle the case. However, none of this was done in a judicial proceeding, but merely by letter and word of mouth between counsel. At no time prior to trial on the merits did counsel for Great American withdraw or abandon its coverage defense for trial purposes. Indeed, the trial court, after trial on the merits, held that Great American's policy did not cover the accident in question. At a partial new trial granted, and after counsel for Great American had admitted on the witness stand that it was true that prior to trial he had agreed to waive the coverage defense question, and would defend Firal Ryder, and in fact had offered the total policy limits in an effort to settle the case, again the trial court held that its initial judgment was correct and that Great American's policy did not cover the accident in question. We agree with the trial court's holding.
In its brief, Continental Casualty Company, the excess insurer of defendant, Firal Ryder, contends that Great American Insurance Company, through the actions of its attorneystating to Ryder's attorney that Great American would waive the coverage defense question; that it would defend its insured, Firal Ryder, and that it would offer the total policy limits in an effort to settle the caseshould be estopped from raising the issue of denial of coverage, and cites the cases of Mathieu v. Williams, 255 So.2d 151 (La.App. 2 Cir. 1971), Pacholik v. Gray, 187 So.2d 480 (La.App. 3 Cir. 1966), and Gulley v. National Life & Acc. Ins. Co., 73 So.2d 341 (La.App. 2 Cir. 1954), as authority for that proposition.
The factual situations in the three abovecited cases are distinguishable from that in the present case. The rule of lawthat representations or vicarious admissions of fact or other stipulations of counsel, as to matters of fact within the scope of his professional function, are admissible when offered by an opposing party in a suit against the principalwas held to apply in a case to recover damages under a non-competition agreement, in which defendant's counsel definitively stated that defendant breached the contract for a certain period of time (Mathieu v. Williams, supra); in a suit for the return of a sum paid on a purchase price, in which counsel admitted that his client never intended to comply with the purchase agreement (Pacholik v. Gray, supra), and in a suit for the recovery of disability payments under an insurance policy, where counsel for the insurer admitted that all the insurance premiums had been paid, which action was contrary to the insurer's defense of non-payment of premiums (Gulley v. National Life, supra). However, in the case at bar, after a trial court ruling denying its motion for a summary judgment on the issue of coverage, Great American's attorney did not admit coverage. Rather, he proceeded to attempt to compromise the case, and that effort having failed, he defended Firal Ryder as if coverage existed; but yet he never judicially admitted coverage. On the contrary, he persisted that no coverage existed, and this issue was resolved in his favor by the trial court. We agree with that holding.
Equitable estoppel arises when one, by his actions, or by his silence when he ought to speak, induces another to believe certain facts, and the other relies on those facts to his prejudice. Ledoux v. Old Republic Life Ins. Co., 233 So.2d 731, 735 (La.App. 3 Cir. 1970), writ refused, 256 La. 372, 236 So.2d 501; Humphries v. Puritan Life Insurance Co., 311 So.2d 534 (La.App. 3 Cir. 1975); Key v. Cherokee Credit Life Ins. Co., 298 So.2d 892 (La.App. 3 Cir. 1974), and cases too numerous to cite. In this case, there was perhaps some action on the part of the agent of Great American which would lead, or mislead, Continental into believing that which did not, in fact, exist. However, Continental has failed to prove that it has relied upon such fact or facts to its detriment. Therefore, such doctrine is not available to Continental against Great American.
*555 Great American, in its appellate brief and at oral argument, admits that its insured, Firal Ryder, may have relied to his detriment upon the action of its attorney-agent and concedes that it should pay to its insured the deductible under the Continental policy, that is, $5,000.00.
All concerned counsel admitted at oral argument that the Tolbert awards by the trial court were not manifestly erroneous under prevailing jurisprudence and consequently abandoned their appeals on that score.
For the foregoing reasons we amend the trial court judgment to provide that Firal L. Ryder and Great American Insurance Company are condemned in solido to pay a total of $5,000.00, plus legal interest thereon from date of the trial court judgment, towards satisfaction of the total judgments rendered.
In all other respects the judgment of the trial court is affirmed.
Costs of this appeal are assessed equally against Great American Insurance Co., Firal Ryder, and Continental Casualty Company.
AMENDED AND AFFIRMED.
NOTES
[1] Tr., page 424.