594 So.2d 1028 (1992)
HUVAL BAKING COMPANY, Plaintiff-Appellant-Appellee,
v.
STATE of Louisiana, WORKER'S COMPENSATION SECOND INJURY FUND BOARD, Defendant-Appellee-Appellant.
No. 90-762.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
*1029 Jeansonne & Briney, Christopher Zaunbrecher, Lafayette, for Huval Baking Co.
Marcia Avery, Baton Rouge, for the State.
Before GUIDRY, FORET and LABORDE, JJ.
GUIDRY, Judge.
On July 23, 1984, John Angelle injured his back when, in the course and scope of his employment with Huval Baking Company (Huval), he fell from a ladder. At the time of injury, he had a preexisting permanent partial disability, a previously ruptured lumbar disc. La.R.S. 23:1378(F)(26). Huval hired Angelle with knowledge of this preexisting disability. The July 23, 1984 injury merged with this preexisting disability, resulting in Huval being liable to Angelle for benefits under the Worker's Compensation Act.
Huval sought reimbursement from the Worker's Compensation Second Injury Board (Board) for the benefits paid to or on behalf of its injured employee, Angelle. Huval sought reimbursement for the weekly benefits, medical payments and a lump sum compromise payment made to Angelle. The Board denied Huval's claim. Huval timely appealed the Board's decision to the district court under the provisions of La. R.S. 23:1378(E). After trial, the district court rendered judgment in favor of Huval and awarded plaintiff reimbursement for all compensation payable after the first 104 weeks of payments. In addition, the court awarded reimbursement of 50% of all "medical expenses actually paid which exceed $5,000, but are less than $10,000". Both parties have appealed the trial court's judgment.
On appeal, Huval asserts that the trial court erroneously used the formula applicable to second accidents occurring after October 1, 1985 (the effective date of Acts 1985, no. 697, § 1, which amended La.R.S. 23:1378(A) to change the pertinent reimbursement calculation formulas) in lieu of the correct formula in effect on July 23, 1984, the date of the second accident.
The Board, in its appeal, assigns as error the following actions of the trial court:
"1. Admitting into evidence the deposition of Dr. Joseph F. Gaar;
2. Admitting into evidence a letter written by defendant's attorney which the Board asserts is hearsay;
3. Admitting into evidence uncertified copies of documents from a prior proceeding;
4. Awarding reimbursement to Huval of medical expenses and weekly benefits;
5. Awarding reimbursement to Huval of supplemental earnings benefits paid in the compromise settlement."
We first consider the Board's several assignments of error.
Essentially, the Board asserts that the plaintiff is not entitled to reimbursement since it did not prove, by competent evidence, that Angelle's subsequent injury would not have occurred but for the previous permanent partial disability or that the second injury, when merged with the pre-existing disability, resulted in a materially and substantially greater disability, as required by La.R.S. 23:1371(C)(2).

EVIDENTIARY ERRORS
Defendant first urges that the trial judge erred by admitting into evidence the deposition of Dr. Joseph F. Gaar. Dr. Gaar, an orthopedic surgeon, did not testify and was not present at the trial of this matter, which took place on December 16, 1988. *1030 However, Dr. Gaar was deposed by the plaintiff and his deposition was offered and admitted in evidence at the trial over defendant's objection.
Use of depositions at trial is governed by La.C.C.P. art. 1450. Paragraph (3) of that article (in effect on the date of the trial which was held prior to its amendment pursuant to Acts 1988, No. 515 § 2) provided as follows:
"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."
Any one of the reasons set forth in paragraph (3) is sufficient to allow admission of a deposition in evidence in lieu of live testimony by the deponent.
The Board was notified of the taking by Huval of Dr. Gaar's deposition but it did not attend. Prior to trial, there was no application and notice pursuant to La. C.C.P. art. 1450(3)(e) and the Board did not stipulate to the general use of the deposition. Accordingly, the Board argues that Huval failed to establish one of the Article 1450 criteria necessary for introduction of the deposition into evidence and, therefore, the trial court erred when it admitted same in evidence. In support, defendant cites Maricle v. Cloud, 341 So.2d 29 (La.App. 3rd Cir.1977), wherein a similar situation occurred.
The record reflects that the plaintiff made no effort to establish any of the criteria necessary as a prerequisite to the introduction of Dr. Gaar's deposition into evidence. As in Maricle, supra, at 30, the trial court erred in admitting and considering the deposition. We are compelled by the clear language of La.C.C.P. art. 1450 and this circuit's ruling in Maricle to exclude consideration of this deposition in this appeal.
The Board also urges that the trial court erred by admitting into evidence a letter written by its counsel to plaintiff's counsel. The Board's counsel at trial was not the same person who had written the letter. The correspondence in question was a cover letter attached to the Board's "Admissions of Fact". The court admitted the letter into evidence, but did so with the understanding that the contents of the letter were not to be considered as one of the Board's admissions of fact. In brief, defendant urges that the letter is hearsay without any further explanation or cited authority, except to argue that no hearsay exception is applicable.
The substance of the letter, dated September 2, 1986, is as follows:
"Mr. Christopher Zaunbrecher
JEANSONNE & BRINEY
P.O. Box 91410
Lafayette, Louisiana 70509
 Re: Huval Baking Company vs.
 State of La. Workers'
 Compensation Second
 Injury Board
Dear Mr. Zaunbrecher:
Pursuant to our telephone conversation of August 25, 1986, with regard to the request for admissions filed by your office, the amount of reimbursable medical expenses is $5,359.57. We also have $21,500 listed by your claims representative as the amount of the compromise settlement. Also, enclosed please find a copy of the request for admissions.
If you have any further questions, please do not hesitate to contact me.
 Sincerely,
 WILLIAM J. GUSTE, JR.
*1031
 Attorney General
 BY: s/ Yolanda
 YOLANDA R. JOHNSON
 Staff Attorney"
The Louisiana Code of Evidence does not apply to this proceeding since it became effective on January 1, 1989. However, the comment to Article 801(C) states that the definition of hearsay provided therein "... is consistent with the traditional definition of hearsay employed by Louisiana courts". As such, we feel the concise definition of "hearsay" provided therein provides guidance for the determination of whether the document in question is admissible. Article 801(C) provides:
"`Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."
Clearly, this letter is hearsay since it was offered by plaintiff to prove the truth of the amounts and nature of the payments referred to therein.
Generally, such evidence is inadmissible unless it fits into one of the exceptions to the hearsay rule. The pre-Code law on this subject was to the effect that extrajudicial admissions made by a party's attorney, if made in his capacity as attorney and within the scope of his representative authority, were admissible as an exception to the hearsay rule. Villavaso v. State Farm Mutual Automobile Insurance Company, 424 So.2d 536 (La.App. 4th Cir.1982); Mathieu v. Williams, 255 So.2d 151 (La. App. 2d Cir.1971); Pacholik v. Gray, 187 So.2d 480 (La.App. 3rd Cir.1966). As a staff attorney employed by the Board, Ms. Johnson was clearly acting within the scope of her authority when she wrote and sent this letter. To the extent that she states "the amount of reimbursable medical expenses is $5,359.57" and recognizes a $21,500 compromise settlement, we consider this an admission by defendant's counsel which fits squarely within the hearsay exception discussed above. The letter was properly admitted in evidence.
The Board next contends that the trial court erred in admitting in evidence uncertified copies of two documents from a prior proceeding. The documents are entitled "Compromise Agreement, Receipt and Release" and "Order of Approval". The compromise, signed by Angelle, released Huval from compensation claims in exchange for a monetary settlement. The order is the trial court's written approval of the compromise. The record reflects that the trial court did indeed admit into evidence uncertified copies of these documents from the separate proceeding entitled John Angelle v. Huval Bakery, Inc., Docket No. 85-0498-G. In support of its assignment of error, the Board cites Code of Evidence Articles 904 and 905. While Article 905(B) does require the copy which has been filed in a public office to be certified by the custodian in order to be considered presumptively authentic, we note once again that these articles were not in effect at the time of the hearing. Thus, they cannot now be raised as authority for the defendant's argument on appeal. See Acts 1988, No. 515, § 12(1), (3). Official comment (a) to Article 905 states "[T]here appears to have been no prior Louisiana jurisprudence on this subject".
Assuming correctness of the Board's contention, any trial error in considering the aforementioned documents was harmless since, in response to Huval's "Requests For Admissions", it admitted that:
"8.
The compromise settlement was approved by the Court in accordance with La.R.S. 23:1273 by Order dated December 12, 1985, in Civil Docket Number 85-0498-G in the 15th Judicial District Court, Lafayette Parish, Louisiana, a copy of which is attached hereto as Exhibit A."
The "Order of Approval" attached to this pleading refers to and approves the compromise. It specifically states the amounts of compensation paid to Angelle in exchange for the release of all claims against Huval. As an exhibit attached to this pleading, the order became a part of the record. La.C.C. art. 1853 provides "[A] *1032 judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it". In Smith v. Board of Trustees of Louisiana School Employees Retirement System, 398 So.2d 1045, 1047 (La.1981), the Louisiana Supreme Court stated "[A]n admission in a pleading falls within the scope of a judicial confession and is full proof against the party making it". See also Crown Zellerbach Corporation v. Louisiana Workmen's Compensation Second Injury Board, 481 So.2d 650 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986). The exhibit which was judicially confessed to by the defendant is clearly subject to this rule. As such, the amounts paid by Huval which are listed therein were confessed to by the Board. Under the clear wording of Article 1853, supra, the confession constituted full proof against the Board and no further proof was necessary. Thus, the plaintiff was not required to provide certified copies of the documents at trial when the defendant had previously confessed to the amounts paid in settlement by Huval to Angelle.

SUBSTANTIVE ASSIGNMENTS OF ERROR
The Board asserts that Huval is not entitled to reimbursement for compensation and medical benefits paid to Angelle because it failed to prove that Angelle's subsequent injury would not have occurred but for the previous permanent partial disability or that the second injury merged with his preexisting permanent partial disability to result in a disability that is "materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, ..." La.R.S. 23:1371(C)(2). Failure to prove the merger to the extent provided in this article precludes reimbursement from the Board. The Board admitted the truth of the following matters in its "Admissions of Fact":
"1.
Prior to July 23, 1984, Plaintiff employed and thereafter retained in its employment John Floyd Angelle (`Angelle').
2.
At the time of Angelle's employment, he had a pre-existing [sic] permanent partial disability, due to a previously herniated lumbar disc.
3.
Plaintiff hired Angelle with knowledge of the pre-existing [sic] disability.
4.
On or about July 23, 1984, in Lafayette Parish, Louisiana, Angelle, while in the course and scope of his employment with Plaintiff, fell from a ladder thereby incurring an injury compensable by Plaintiff under the Louisiana Workmen's Compensation Act.
5.
The injury of July 23, 1984, merged with Angelle's pre-existing [sic] permanent partial disability, resulting in liability on the part of Plaintiff for disability under the Act due to the merger of the subsequent injury with the pre-existing [sic] permanent partial disability."
The purpose of the Louisiana Worker's Compensation Second Injury Fund is explained in La.R.S. 23:1371, which provides as follows:
"A. It is the purpose of this part to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers and insurers from excess liability for worker's compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone.
B. This part shall not be construed to create, provide, diminish or affect in any way the worker's compensation benefits due to an injured employee. The payment of compensation to an injured employee *1033 under this chapter shall be determined without regard to this part, and the provisions of this part shall be considered only in determining whether an employer or his insurer is entitled to reimbursement from the worker's compensation second injury fund herein created.
C. As used in this part, the merger of an injury with a preexisting permanent partial disability is limited to the following:
(1) The subsequent injury would not have occurred but for the preexisting permanent partial disability; or
(2) The disability resulting from the subsequent injury in conjunction with the preexisting permanent partial disability is materially and substantially greater than that which would have resulted had the preexisting permanent partial disability not been present, and the employer has been required to pay and has paid compensation for that greater disability."
In Southern Casualty Insurance Company v. Louisiana Workmen's Compensation Second Injury Board, 478 So.2d 573 (La.App. 2d Cir.1985), our brethren of the Second Circuit, in interpreting this statute, stated:
"... The term "merger" has the connotation of two factors occurring in combination.... the term connotes either a specific new aggravation of a previous condition, or a new condition which couples or combines with a previous condition to create a "materially greater" disability than that which would have resulted had the preexisting permanent partial disability not been present. Thus, the issue in such cases should be whether the disabilities combine or act in concert to make the worker materially and substantially more disabled than if the worker only suffered from the second injury or condition."
The Board's admission of facts one through four allows the plaintiff to pursue a claim for reimbursement before the Board, subject only to the establishment of the additional element that the second injury "merged" with Angelle's preexisting permanent partial disability as defined in La.R.S. 23:1371. Admission number five established that the second injury did in fact merge with the previous condition. La.C.C. art. 1853; Smith, supra; Crown Zellerbach Corporation, supra. The question remained, however, as to whether the "merger" was one within the intendment of R.S. 23:1371, i.e., whether the subsequent injury would not have occurred but for the preexisting permanent partial disability; or, whether this "merger" resulted in either a specific new aggravation or a materially and substantially greater disability as the term is so limited by La.R.S. 23:1371(C)(2).[1]
Besides the deposition of Dr. Gaar, which, as previously discussed, was erroneously admitted into evidence and considered by the trial judge, there is no evidence in the record to substantiate the conclusion that Angelle's second injury "merged" with his prior condition within the meaning intended in La.R.S. 23:1371(C). The only evidence in the record on appeal which would satisfy this element of proof is contained in the deposition testimony of Dr. Gaar. Without reference thereto, the evidence is insufficient to prove the "merger" to the extent required by the statute.
The Board's final assertion of error concerns the trial court's award of reimbursement to Huval for supplemental earnings benefits (SEBs) paid in the compromise. It argues that the $21,500 payment in compromise should have been classified as temporary total disability benefits, which, at the time of Angelle's injury, were not reimbursable. *1034 Essentially, the Board urges that Huval did not carry its burden of proving that the $21,500 paid in compromise was one of the four types of benefits for which reimbursement is authorized under La.R.S. 23:1378(A). That statute, as in effect on the date of Angelle's second injury, provided:
"A. An employer operating under this Chapter who knowingly employs or knowingly retains in his employment an employee who has permanent partial disability, as defined in Subsection (F) hereof, shall be reimbursed from the Second Injury Fund as follows:
(1) Supplemental earnings benefits or permanent partial benefits. If an employee incurs a compensable disability which merges with a preexisting permanent partial disability, as defined in Subsection (F) hereof, supplemental earnings benefits or permanent partial benefits, pursuant to R.S. 23:1221(3) or (4), the employer shall pay all benefits provided in this Chapter, but such employer shall be reimbursed from the Second Injury Fund for sixty percent of all benefits which the employer has been required to provide pursuant to R.S. 23:1221(3) or (4).
(2) Permanent total disability. If an employee incurs a compensable disability which merges with a preexisting permanent partial disability, as defined in Subsection (F) of this Section, to cause permanent total disability, the employer shall pay all benefits provided by this Chapter, but such employer shall be reimbursed from the Second Injury Fund for all compensation in excess of the first one hundred four weeks of disability compensation.
(3) Death benefits. If compensable death benefits result from a merger of a preexisting permanent partial disability and compensable injury, the employer shall pay the death benefits prescribed in this Chapter, but he shall be reimbursed from the Second Injury Fund for all death benefits after the first one hundred seventy-five weeks of payment. No employer or insurer shall be entitled to reimbursement unless it is clearly established that the employer had actual knowledge of the employee's preexisting permanent physical impairment prior to the subsequent injury and that compensable death did not arise solely from the compensable injury.
(4) An employer entitled to reimbursement from the Second Injury Fund shall be reimbursed from said fund for fifty percent of the first ten thousand dollars paid for necessary medical, surgical, and hospital services and medicine for the same injury; thereafter, the employer shall be reimbursed from said fund for all sums paid pursuant to R.S. 23:1203 for necessary medical, surgical, and hospital services and medicine."
This statute was analyzed in National Union Fire Insurance Co. v. Louisiana Worker's Compensation Second Injury Board, 535 So.2d 474 (La.App. 1st Cir. 1988), wherein the court reasoned that "[U]nder this statute, reimbursement can be made for payments of supplemental earnings, permanent partial, permanent total, or death benefits. If reimbursement is made for any one of these, the claimant can also get reimbursement for medical expenses". By its clear wording, paragraph (A) excludes temporary total disability benefits from reimbursement.
Although the statute does not expressly provide for reimbursement of compromised claims, it is well settled that compromised claims are indeed reimbursable if the claim is classified as one for which reimbursement is authorized. National Union Fire Insurance Co., supra; Parish Government Risk Management Agency v. Louisiana Workmen's Compensation Second Injury Board, 524 So.2d 267 (La.App. 5th Cir.1988), application denied, 526 So.2d 1119 (La.1988); Town of Homer v. Louisiana Worker's Compensation Second Injury Board, 510 So.2d 419 (La.App. 2d Cir. 1987).
The plaintiff seeking reimbursement from the Board bears the burden of proving that compensation benefits qualify as reimbursable. If Huval had sufficiently proven the merger under La.R.S. 23:1371, supra, it would then have had to show that *1035 the payments made to Angelle were subject to reimbursement under La.R.S. 23:1378(A). The only evidence in the record on appeal that could possibly have established the specific classification of benefits is contained in Dr. Gaar's deposition testimony. Since the deposition was not admissible, the trial court's ruling that the $21,500 compromise was reimbursable supplemental earnings benefits, without any further proof to substantiate its ruling is clear error.
Plaintiff called one witness at the trial of this matter, John Picard, Huval's personnel manager. He testified that the total amount of "worker's compensation benefits payments made to John Angelle" was, at the date of trial, $24,275.20. He did not provide any further specificity as to the classification of the benefits paid. In fact, on cross-examination, Picard stated that he did not know what type of benefits were paid in the lump sum settlement. He further said that, in the compromise, Huval was "settling all claims". Without specific proof sufficient to establish that reimbursement was authorized, the trial court erred in determining that the benefits were reimbursable.
La.C.C.P. art. 2164 provides, in pertinent part, that "[T]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal". The Court of Appeal may remand the case to the trial court for introduction of additional evidence to prevent a miscarriage of justice; such power is discretionary and depends upon the circumstances of each case. St. Pierre v. Hirshfield, 569 So.2d 222 (La.App. 1st Cir.1990); Whitehead v. Texada, 520 So.2d 1189 (La.App. 3rd Cir.1988), writ denied, 522 So.2d 568 (La.1988).
In the interest of justice, we will remand this case to the trial court for the following purposes: first, for the taking of further evidence on the issue of whether or not the second injury "merged" with Angelle's preexisting permanent partial disability, within the intendment of La.R.S. 23:1371(C); and, secondly, for the taking of further evidence on the classification of benefits paid by Huval to Angelle following his July 23, 1984 injury, including classification of the benefits paid in compromise settlement.
Huval's sole assignment of error is with merit. We agree that, as a matter of law, the trial judge applied the wrong formula to determine reimbursement benefits and medical payments. In calculating reimbursement according to the formula applicable to injuries occurring after October 1, 1985, the trial judge clearly ignored the provision of Acts 1985, No. 697 § 2 which reads:
"The provisions of this act shall not be retroactive and shall only apply to compensable injuries occurring on or after October 1, 1985."
Angelle's injury occurred on July 23, 1984. The trial court should have applied the formulas applicable prior to October 1, 1985 in accordance with then effective La. R.S. 23:1378(A), cited supra. If, on remand, the trial court determines that Huval sufficiently proves "merger" within the intendment of La.R.S. 23:1371(C) and also proves that benefits paid by Huval to Angelle qualify for reimbursement as authorized by La.R.S. 23:1378(A), then the amount of reimbursable benefits should be calculated in accordance with La.R.S. 23:1378(A) in effect on the date of Angelle's second injury.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside and this matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed to Huval Baking Company. Costs at the trial level are to await a final determination of this matter.
REVERSED AND REMANDED.
NOTES
[1] We recognize that a reasonable argument could be made that since the Board admitted the "merger", it provided the final element of proof necessary since the term "merger", as it applies to second injuries, has meaning only insofar as it is defined and limited in La.R.S. 23:1371. Stated another way, such an admission, although not framed as such, could reasonably be considered a recognition that Angelle's second injury merged with his previous condition within the intendment of La.R.S. 23:1371(C). We need not address this issue since separate reasons related to other issues of proof require us to reverse the trial court's judgment and remand for further proceedings.